725 P.2d 526

**ASSOCIATED TAXPAYERS OF IDAHO, INC. and Russell Westerberg, Petitioners,**

v.

**Pete CENARRUSA, Secretary of State, State of Idaho; "Vote Yes" For Idaho's Economy; Idahoans For the Right To Vote on Lotteries; and Idaho Allied Christian Forces, Inc., Respondents.**

and

**Mike Blackbird; Rosie D. Reilly; Kimberly Lannen Stanphill; Steve Herndon; Jeanne Givens; Marvin Vandenberg; Lee Ray; Alex Bedini, Intervenors,**

and

**Help Idaho Thrive, Intervenor.**

No. 16589.

Supreme Court of Idaho.

Sept. 15, 1986.

Richard C. Fields and Stephen R. Thomas, Moffatt, Thomas, Barrett & Blanton, Boise, for Petitioner, Associated Tax Payers of Idaho, Inc.

Jim Jones, Atty. Gen., and David G. High, Deputy Atty. Gen. (argued), Boise, for Secretary of State, State of Idaho.

No appearance for other respondents.

Raymond C. Givens, Coeur d'Alene, for intervenor, Mike Blackbird, et al.

Stanley Crow, Boise, for intervenor, Help Idaho Thrive.

OPINION

WHEREAS, Petitioners filed an APPLICATION FOR WRIT OF PROHIBITION with supporting brief and affidavit of Russell Westerberg; and thereafter served copies of the Application to all real parties in interest and potential parties in interest, including Pete Cenarrusa, Secretary of State; Vote Yes for Idaho's Economy; Idahoans for the Right To Vote On Lotteries; Idaho Allied Christian Forces, Inc.; and thirty-one individuals who originally signed the lottery initiative petition; and the Court subsequently granted Motions to Intervene by Mike Blackbird, et al, and Help Idaho Thrive; and the Court received Answers and supporting documents by Cenarrusa, Vote Yes for Idaho's Economy, Mike Blackbird, et al, and Help Idaho Thrive; and thereafter, the Court set oral arguments on September 5, 1986; and

WHEREAS, after oral argument, the Court having considered all of the above documents and arguments; and

NOW, THEREFORE, IT IS HEREBY ORDERED, that the APPLICATION FOR WRIT OF PROHIBITION be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT, attorney fees and costs be, and hereby are, DENIED.

Order of the Court is joined in by DONALDSON, C.J., and SHEPARD and BISTLINE, JJ.

BAKES and HUNTLEY, JJ., would grant the writ.

DONALDSON, Chief Justice, specially concurring in the Order Denying the Writ of Prohibition.

The dissent to the order denying the Writ of Prohibition nullifies the right of the people to exercise their franchise which is to vote so as to express their views on the lottery issue. Any conflict between the initiative and the constitution has no bearing on the right of the people to enact it. *Iman v. Bolin,* 98 Ariz. 358, 404 P.2d 705, 709, (1965), *citing State v. Osborn,* 16 Ariz. 247, 143 P. 117, (1914).

Petitioners' action attacking the constitutionality of the proposed initiative is premature and presents no justiciable controversy at this time. For this Court to act, "[there] must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Harris v. Cassia County,* 106 Idaho 513, 516, 681 P.2d 988, 991 (1984), *quoting Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Only if the lottery initia-

tive passes, will its subject matter then become subject to constitutional challenge. *Oregon Education Ass'n. v. Paulus,* 78 Or.App. 32, 714 P.2d 1060 (1986); *Union Electric Co. v. Kirkpatrick,* (Mo.1984), 678 S.W.2d 402; *State ex rel. Walter v. Edgar,* 13 Ohio St.3d 1, 469 N.E.2d 842 (1984); *McKee v. City of Louisville,* 200 Colo. 525, 616 P.2d 969 (1980). Until this future event occurs, we cannot do what petitioners ask of us.

It is true that this Court entertained a pre-election review of an initiative in *Gumprecht v. City of Coeur d'Alene,* 104 Idaho 615, 661 P.2d 1214 (1983). However, we held only that an initiative election was an improper method to amend or enact zoning ordinances because the legislature had statutorily prescribed exclusive zoning procedures, and an initiative election was not one of those statutorily authorized procedures. More importantly, we specifically refrained from addressing or deciding the substantive validity of the proposed initiative. *Id.* footnote 1 at 616, 661 P.2d at 1215. Here, it has been determined that the Secretary of State has complied with all the requirements of preparing the initiative for placement on the ballot. Furthermore, as in *Gumprecht,* we do not address the substantive validity of the proposed initiative.

If the voters at the election defeat the lottery, then the state will know what a majority of the voters of Idaho want. If the lottery passes, then the legislators who represent the people will know what the peoples' wishes are and can act in a constitutional manner to amend the constitution so as to carry out those wishes.

At this time any action by the Court is premature, ignores the Doctrine of Separation of Powers, and thwarts and interferes with the peoples' right to exercise their franchise which is the most fundamental and cherished right of the people. This attempted interference is what I refuse to take part in, and I strongly disagree with any attempt to interfere.

SHEPARD, Justice, concurring in the denial of the writ.

In the ordinary course of events this Court, when asked to issue an alternative extraordinary writ, only enters an order issuing or denying the writ. In the instant matter the membership of the Court insists on the entry of opinions explaining why the Court was correct or erroneous in denying the writ. Hence, I join the parade.

The history of the initiative process is amply discussed in *Luker v. Curtis,* 64 Idaho 703, 136 P.2d 978 (1943). Here it is sufficient to state that it arose during the Populist movement in part as a result of dissatisfaction with the traditional representative legislative process. The initiative clause of our Constitution was adopted in 1912, and lay dormant for more than 20 years until the legislature in 1933 prescribed the method of exercising the initiative privilege. That clause of our Constitution provides: "The people reserve to themselves the power to *propose* laws, and *enact* the same at the polls independent of the legislature." At this point in time the contents of the petitions have only been proposed, and only if and when the "law" is approved by "a number of voters equal to a majority of the aggregate vote cast for the office of governor," will such law be *enacted.* What the Court is asked to do today is no different than if it were asked at an earlier time to enjoin the circulating of petitions or to prohibit the Secretary of State from filing the petitions. Today the initiative remains a *proposal,* and it will only become *enacted* if approved by the voters in November.

In my view it is exceedingly dangerous for this Court, or any court, to interfere with the legislative *process.* Within the duties of this Court is the determination of the constitutionality of actions of other branches of government but only when the time and circumstances are appropriate. I suggest that neither the time nor the circumstances are appropriate during the legislative *process.*

I find no precedent for this Court prohibiting the voters from expressing their opinions at the polls. In *Luker v. Curtis, supra,* the voters by initiative enacted in November 1942 the "Senior Citizens Grants Act" which was certified and declared in force November 23, 1942. In January 1943 the Idaho legislature promptly repealed

that Act. The Court was not asked to, nor did it interfere in the initiative process, nor in the legislative process repealing the initiative. Rather, after the passage of the repealing legislation it was asked to determine, and declared that the repealing legislation was constitutional. In the case of *In re Petition of Idaho State Federation of Labor*, 75 Idaho 367, 272 P.2d 707 (1954), a petition for an initiative measure was presented to the Secretary of State in April 1954. The Secretary of State, as required by the statute, submitted the petition to the Attorney General for the preparation of a title. The sole issue in the case was the sufficiency of the title prepared by the Attorney General. In June of that year the Court, rather than interfering with the initiative process, disapproved the title and required the Attorney General to "within five days after this decision becomes final, prepare a title in accordance with the views expressed herein and file the same with the Secretary of State."

At no time in the past has this Court attempted to prohibit either the elected representatives, or the people, from casting a vote on proposed legislation. To argue, as do the petitioners here, that the two legislative processes, one by the elected representatives, and the other directly by the people through the initiative, are different because the representative process contains opportunity for deliberation and/or amendment, is unavailing. Circumstances can easily be postulated illustrating the inevitability of the enactment of unconstitutional legislation absent interference by this Court. Nevertheless, I deem it clear that this Court would not so interfere in the legislative process.

Our legislature has enacted lottery legislation which was later held to be clearly unconstitutional. In 1947 the legislature purported to legalize lotteries in the state of Idaho. This Court did not attempt to interfere with the legislative process, but rather waited until an appropriate case had been brought before the Court in 1953 to declare the legislation unconstitutional. *State v. Village of Garden City*, 74 Idaho 513, 265 P.2d 328 (1953). Legislation proposed by the initiative process may suffer similar defects.

As stated in Greenburg, The Scope of the Initiative and Referendum in California, 54 Cal.L.Rev. 1717 (1966):

As the periodic assaults on the initiative and referendum arise and fade, it is hoped that the courts will resist urgings to use judicial powers to circumscribe these institutions. While the initiative and referendum may not fit into a given philosopher's democratic model, and while these powers may, like any others, be misused from time to time, one would hope that the courts will not fall prey to the elitist argument that the people do not know what is best for them and therefore need someone else to tell them. Pragmatically, the institutions work; like their representatives, the people may sometimes approve mischievous or unconstitutional measures, but by and large as studies show, they are good legislators. In a society where government moves further and further from the people, these institutions can help keep it near. If an occasional "bad" measure is passed, let those who urge less democracy instead use the tools of democracy to convince the people of the "rightness" of their view. While the courts have the duty to maintain these institutions within their proper boundaries, they should not be the vehicle for any constriction of those boundaries.

It is suggested by petitioners that two cases require the issuance of the writ prohibiting the initiative measure from the November ballot. I disagree. The case of *Legislature of State of California v. Deukmejian*, 34 Cal.3d 658, 194 Cal.Rptr. 781, 669 P.2d 17 (1983) involved the reapportionment of the California legislature. There, the legislature had, in September of 1981, reapportioned the California legislature. A referendum election to repeal that legislation was sought, and upheld by the court, which ruled that the legislation was stayed pending the referendum process. Nevertheless the court held that those stayed reapportionment statutes would govern the legislative elections of June and

November 1982. In June 1982 the voters, by referendum, rejected the legislatively enacted reapportionment. Iniative petitions for yet another reapportionment scheme were submitted and the California court prohibited those proposed from being placed on the ballot, reasoning that the implementation of further changes in reapportionment so close to the time of the June 1984 election would make the selection and seating of any legislature impossible. I suggest that the California imbroglio is a far cry from the instant case. The California court stated:

The general rule favoring post-election review contemplates that no serious consequences will result if consideration of the validity of a measure is delayed until after an election. Under those circumstances, the normal arguments in favor of the "passive virtues" suggest that a court not adjudicate an issue until it is clearly required to do so. If the measure passes then there will be ample time to rule on its validity. If it fails, judicial action will not be required.

Likewise, I do not agree that *Gumprecht v. City of Coeur d'Alene*, 104 Idaho 615, 661 P.2d 1214 (1983), provides any authority for the issuance of a writ in the instant case. In *Gumprecht* the legislature had enacted the Local Planning Act of 1975, I.C. §§ 67–6501 *et seq.* The Court held that such legislative act made mandatory the zoning and planning by local governing boards or established commissions, and hence, "The utilization of an initiative process for zoning matters is inconsistent with the comprehensive statutory procedures mandated by the Local Planning Act of 1975 to be followed in enacting and amending local zoning ordinances and is therefore invalid." The effect of the Court's ruling was that there was no authorized initiative process in zoning matters and that all zoning matters had been preempted by the Local Planning Act of 1975. In contrast, in the instant case the initiative process is clearly established and mandated in our Constitution as a reserved right in the people. In *Gumprecht*, as contrasted with the present case, the Court clearly refused to address or decide the validity of the proposed amendments, or whether the initiative process would defeat due process protections afforded to property owners.

In brief, our Constitution guarantees our people the right to *propose* legislation through the initiative process. That right is not circumscribed or limited to "good" legislation or "constitutional" legislation. The voters may or may not *enact* the proposed legislation. If enacted it may be repealed by the next representative legislative session in 1987. We are assured by intervenors that if enacted by the voters, the legislation will be the subject of litigation. The time and circumstances are not appropriate for this Court, if ever, to interfere with or prohibit our people's constitutional right to exercise the initiative process.

DONALDSON, C.J., concurs.

BISTLINE, Justice, specially concurring.

Having concurred in the Court's decision to deny the issuance of a writ, I write only to explain why the views of the dissenting justices are not persuasive.

If the initiative gets the requisite number of votes, it will become statutory law. This would be equally true if it were a legislative enactment (with or without the Governor's approval).

As the well-written brief of the able Attorney General makes clear, at such time as any bill, people proposed or legislature proposed, becomes law, it is subject to a constitutional challenge in this Court. The people are possessed of just as much right as is the legislature to enact a law notwithstanding that its constitutionality has been brought under question in the process.

By example, in 1959 a law was enacted by the legislature which would authorize municipalities to issue bonds for acquisition of manufacturing, industrial or commercial enterprises and village ordinance providing for acquisition by village of a site and the construction of an industrial plant thereon to be leased to a corporation which will

occupy and use the plant in a private manufacturing enterprise. The constitutionality of that law was not subject to judicial attack until it became the law.[1] In June of 1960, that law was held violative of constitutional prohibition against any municipality lending its credit in aid of a corporation, notwithstanding that the bonds are revenue bonds and that there will be an incidental or indirect benefit to the public. The Court's comprehensive opinion was authored by Chief Justice Taylor and joined by every member of the Court. "For all the reasons mentioned, we hold Chapter 265, Session Laws 1959, to be unconstitutional and void." *Village of Moyie Springs, Idaho v. Aurora Manufacturing Co.*, 82 Idaho 337, 350, 353 P.2d 767, 780 (1960).

Twenty-five years later with no member of the 1960 Court still sitting, the Court worked its way around the *Moyie Springs* case in a concerted effort to uphold a strikingly similar situation where the city government of Idaho Falls agreed to float a bond issue in order to build a power manufacturing facility on land owned by Utah Power & Light Company, a corporate utility under the laws of the State of Utah. *Utah Power & Light Co. v. Campbell*, 108 Idaho 950, 703 P.2d 714 (1985).[2] Conceding the impediment of the continuing validity of the *Moyie Springs* case, a four-member majority in the *Utah Power* case found language in *Hansen v. Kootenai County Board of Commissioners*, 93 Idaho 655, 471 P.2d 42 (1970), which was utilized to deny the invalidity of Utah Power's arrangement with the city. Of the 1960 Court, only Justices McFadden and McQuade sat on the *Hansen* case, as was true in a companion case decided just a

year earlier in *Coeur d'Alene Turf Club, Inc. v. Cogswell*, 93 Idaho 324, 461 P.2d 107 (1969). In the *Hansen* case, Justice McQuade was the only dissenting vote, and Justice McFadden wrote the majority opinion in the *Turf Club* case, in which District Judge Scoggin, sitting with the Court, joined the dissent of Justice McQuade. Justice Spear, who was the district judge who had upheld the validity of the *Moyie Springs-Aurora* transaction, was a necessary third vote in the *Turf Club* case, and undoubtedly a strong voice and vote in the *Hansen* case.

The foregoing review is offered for the purpose of suggesting the improvidence of today's two dissenters in forecasting the invalidity of the proposed lottery initiative. While chances are that, should the initiative pass into law, there will be a challenge, chances also are that the five attorneys who presently serve as justices of the Idaho Supreme Court might not yet be sitting when any challenge reaches this Court. Life is not all that certain, and it is also not improbable that in the meanwhile Chief Justice Donaldson, or Justice Shepard, or Justice Bakes, or all three, might be elevated to the federal judiciary.

In my view it is questionable for any member of the judiciary to voice an assessment of the validity of proposed legislation, but especially questionable for such expressions to come from anyone in the judiciary who can reasonably be expected to become involved in deciding an issue that may or may not develop into a justiciable controversy.

My own assessment, as to the *past*, is that the Court as comprised in 1960 would not have ruled as did the Court as differ-

---

1. When one scans the list of senators and representatives in the 1959 legislature, one may be certain that in those bodies there were those who forewarned of the constitutional invalidity of that legislation. To name a few (some of whom were practicing attorneys): Carl A. Burt, Holger Albrethsen, Glenn E. Bandelin, C.A. Bottolfsen, R.H. "Bill" Young, Robert M. Wetherell, Cy Young, Grant L. Young, J. Ray Cox, Jr., Jack M. Murphy, Vernon Daniel, Arthur P. Murphy, James B. Donart, W.D. "Bill" Eberle, Sam Kaufman, Jr., T.F. Terrell, Pete T. Cenarrusa, Orval

Hansen, C.H. Higer, Gregg Potvin, and Harry B. Turner.

2. "On July 19, 1984 the Idaho Falls City Council adopted ordinance No. 1763, in which it found that it was necessary, desirable and essential to the well-being of the City's inhabitants to undertake acquisition and construction of the Project." *Utah Power & Light, supra,* 108 Idaho at 952, 703 P.2d at 716.

ently comprised in *Hansen, supra,* in *Turf Club, supra,* and in *Utah Power, supra.* Again, as to the *past,* my own view, erroneous at the time, was that the same Court membership which was unanimous in the *Moyie Springs* case would have voted otherwise than occurred in *Oneida County Fair Board v. Smylie,* 86 Idaho 341, 386 P.2d 374 (1963), the decision which held valid the law authorizing betting on horses.

If it be true, as the dissenters say, that all of the parties who have briefed and argued orally have agreed that the proposed initiative is unconstitutional, that would be not one whit more binding on this Court than would be the case were there to be an actual justiciable controversy before us as to the constitutional validity of an *enacted* statute.

Generally, I agree with Chief Justice Donaldson's assessment of the lack of pertinence of the *Gumprecht* case, and also his statement that as in *Gumprecht* we do not address the constitutional validity of the proposed initiative—noting somewhat of an inconsistency in his adding that if the initiative passes, then the legislators, on being so advised, can proceed to amend the Constitution in a constitutional manner. I had rather thought that only the two dissenting voters were presently advocating the unconstitutionality of the initiative.[3]

I most strongly disagree with the language in the dissenting opinion wherein it is stated that all of the parties have agreed that our Idaho Constitution cannot be amended by use of the initiative—my disagreement being not with the statement itself (a point on which I tender no premature view), but being addressed to the singular fact that such is not an issue before us.

Citing *Gumprecht* and another case, the dissenters say: "Because of the importance of this issue to the citizens of the State of Idaho, we should rule upon the merits now.... Both the public treasury and public expectations deserve our immediate

action on this important issue." That which I wrote in *Gumprecht* is admirably suited for my response here:

> However, over the many years I have generally remained apprehensive of the actions of those who profess to act for the benefit of the people—and necessarily must apply that scrutiny to myself as well, or plead guilty to hypocrisy. Where the right to legislate has been conferred directly upon the electorate of the cities of Idaho, Coeur d'Alene being such, it behooves a court to be extremely careful in disenfranchising that electorate.

> *Gumprecht, supra,* 104 Idaho at 619, 661 P.2d at 1218.

And on a page following added:

> Where as here we do not speculate on the outcome of the initiative election, it would be both premature and improper to in any way allude to the validity of the proposed ordinance.

> *Id.* at 620, 661 P.2d at 1219.

The dissenters say in closing that the Court's decision to not interfere with the initiative is fueling the expectations of the people—making them believe that their votes in November will be meaningful when "they are not."

This is not overly influencing. John Corlett, political writer for *The Idaho Statesman* has already cast some doubt on the validity of the initiative should it pass into law. The people are not all that uninformed as is suggested. Not only have they heard from Mr. Corlett, but the President Pro Tem of the Senate, who, from my reading of the newspapers and listening to the other media, has suggested to the people that the initiative be used. And, is not the President Pro Tem also, as are we, an attorney admitted to the Bar of this state? If the people of the state are not fully or capably informed, the correction of that state of affairs is not a matter for this Court.

---

**3.** It is noted that the dissenters quickly seized upon this inconsistency in adding footnote 3 to their opinion.

HUNTLEY, Justice, dissenting from order denying writ of prohibition:

The majority of the Court, apparently deeming the petition in this case to be premature because it would be interfering with the legislative process, refuses to adjudicate the issue of the unconstitutionality of the lottery initiative. The proposed initiative would submit to the vote of the people an act establishing a state-run lottery in Idaho. While I, too, am hesitant to interfere in the "legislative process," there is authority in Idaho for this Court to grant the relief requested by the petitioner and, accordingly, I would grant the petition and reach the merits raised by the petition. When the merits are reached, it is unquestionably clear that the proposed initiative petition violates Art. 3, § 20, of the Idaho Constitution, which prohibits the legalization of lotteries.[1]

## I

This Court has historically recognized the mandate of Art. 2, § 1, of the Idaho Constitution which separates the powers of state government into "three distinct departments, the legislative, executive and judicial," and the explicit command that "[n]o person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this Constitution expressly directed or permitted." Because of that clear constitutional mandate, this Court has generally refused to interfere in, or dictate, how the legislative branch of government conducts its business. *Beitelspacher v. Risch,* 105 Idaho 605, 671 P.2d 1068 (1983). Nor have we ever attempted to rule in advance of passage of legislation on the interpretation, legality, or constitutionality of legislation proposed, but not yet passed. Such would be, in effect, to give an advisory opinion.

Initiatives proposed pursuant to Art. 3, § 1, of the Idaho Constitution, and I.C. §§ 34–1801 *et seq.* are a part of the legislative process. *Luker v. Curtis,* 64 Idaho 703, 136 P.2d 978 (1943). As such, initiatives are ordinarily entitled to the same constitutional deference as is the legislative process conducted by the legislature. Initiative legislation has the same force and effect as that enacted by both houses of the Legislature and approved by the governor, and must not violate any constitutional prohibition of the United States or of the State of Idaho. *State v. Finch,* 79 Idaho 275, 315 P.2d 529 (1957) (initiatives are subject to the same constitutional limitations as legislation passed by the legislature).

However, there are some differences in the two legislative processes. While a bill is pending in the legislature, it is always subject to future amendment which could eliminate unconstitutional provisions. However, an initiative petition, once circulated, cannot be amended and must be submitted in the exact form as circulated. Accordingly, there is no means for correcting or eliminating unconstitutional provisions in an initiative proposal as there is with pending legislation before the legislature. Secondly, the initiative process, by comparison to the legislative process, is extremely expensive and time-consuming. While there is little drain on the public treasury for processing a single act through the state legislature to a conclusion, the state-wide initiative process does provide a substantial drain both upon the state treasury and the parties concerned, thereby justifying, from an economic point of view, a declaratory judicial review of the legality of the initiative petition prior to a vote by the people. Thirdly, and perhaps most importantly, the initiative process more directly involves the citizenry in the democratic process and, as a result, raises the level of the expectation of the citizenry that their vote on the initiative petition will be meaningful. It would tend to frustrate public expectations and to discourage participation in this unusual application of the democratic process if the public had submitted to it initia-

---

1. "**§ 20. Lotteries not to be authorized.**—The legislature shall not authorize any lottery or gift enterprise under any pretense or for any purpose whatever."

tive proposals which were obviously and unequivocally void, being in direct violation of the Idaho Constitution.

For the foregoing reasons, this Court has viewed legislating, by the initiative process, to be different from legislating by legislative bodies. While we have been loathe to involve ourselves with the legislative bodies as they deliberate and proceed with the legislative process, we have intervened to prevent obviously illegal initiatives from being submitted to the voters. In the recent case of *Gumprecht v. City of Coeur d'Alene,* 104 Idaho 615, 661 P.2d 1214 (1983), this court stated:

> The question presented in this case, whether the election itself is proper, is similar to the question presented in *Perrault [v. Robinson,* 29 Idaho 267, 158 P. 1074 (1916)]. If an initiative election is an improper means of adopting or amending zoning ordinances in Idaho, then the city council of Coeur d'Alene would be acting in excess of its jurisdiction in holding the election. *We hold that review of a petition for writ of prohibition is proper where, as in this case, the resolution of an important undecided question of law will necessarily decide the propriety of the election.* 104 Idaho at 617, 661 P.2d at 1216 (emphasis added).

*See also, In re Petition of Idaho State Federation of Labor,* 75 Idaho 367, 272 P.2d 707 (1954).

Other states, under similarly unusual circumstances, have intervened in the initiative process to rule upon the validity of such initiatives. In *Legislature of California v. Deukmejian,* 34 Cal.3d 658, 194 Cal.Rptr. 781, 669 P.2d 17 (1983), the court stated:

> We conclude, based upon the principle that in the enactment of statutes the constitutional limitations that bind the Legislature apply with equal force to the people's reserved power of initiative, that [an initiative petition seeking to circumvent the constitutional provision limiting legislative redistricting to once every ten years] cannot be justified. Therefore,

the proposed initiative is constitutionally impermissible and may not be submitted to the voters.

In view of the important policy questions involved, and because of the obvious unconstitutionality of the Idaho lottery initiative, we should decide this case on the merits at this time.

II

When the merits of the Associated Taxpayers' petition for writ of prohibition are reached, it is clear that the proposed lottery initiative violates Art. 3, § 20, of the Idaho Constitution and is thus void.

First, it must be pointed out that all parties to this proceeding have agreed that the Idaho Constitution cannot be amended by initiative. The procedure for amending the Constitution is set out in Art. 20, §§ 1 and 3. That process requires both houses of the legislature to pass a proposed amendment by two-thirds of the vote of the members of both houses, and the matter then to be submitted to the electorate for approval by a majority of the voters at the next general election. The 1912 amendment to Art. 3, § 1, which allowed the people to exercise the right of initiative and referendum "under such conditions and in such manner as may be provided by acts of the legislature," did not impliedly amend Art. 20 of the Constitution and change the method for changing the Constitution. The initiative power under Art. 3, § 1, as amended, applies only to proposing and reviewing legislation, and not to amending the Constitution. All parties have thus agreed, and therefore it is important initially to establish, that no party contends this initiative can amend Art. 3, § 20, of the Idaho Constitution regarding the prohibition against the legislature authorizing lotteries.

The legal issue which this petition for writ of prohibition raises, then, is whether or not the prohibition contained in Art. 3, § 20, of the Constitution, which provides that "the *legislature* shall not authorize any lottery ...," is limited to legislation

passed by the Idaho legislature, and does not apply to initiative legislation proposed by the people. Those supporting the initiative argue that the Art. 3, § 20, prohibition is limited to the Idaho state legislature, and not to the people themselves by the initiative process.

However, our cases are clear and unequivocal that the initiative process is merely another manner of the execution of the legislative authority granted in Art. 3 of the Idaho Constitution, and that all limitations and prohibitions on the exercise of that legislative power by the legislature are equally applicable to legislation proposed by the initiative process. *State v. Finch, supra.*

The initiative process is just another way of legislating, and that legislation must comply with the same constitutional requirements as would legislation enacted by the Idaho legislature.

The question then becomes whether the Idaho legislature could enact statutes similar to those proposed in the lottery initiative. The answer to that question is also clear and unequivocal. In *State v. Village of Garden City*, 74 Idaho 513, 265 P.2d 328 (1953), this Court held that the licensing of lotteries by government, at whatever level, violates the provisions of Art. 3, § 20, of the Idaho Constitution. The Court stated:

"All the people of the state are bound by constitutional limitations, and Art. 3, § 20, of the Constitution is, with the oth-

er provisions, the supreme law of the land." 74 Idaho at 524, 265 P.2d at 339.

The Court held that the ordinance of the Village of Garden City which licensed lotteries was invalid as violating Art. 3, § 20. "An unconstitutional act is not a law." 74 Idaho at 524, 265 P.2d at 339.

Accordingly, it is unequivocally clear that if the initiative authorizing a lottery enterprise and licensing it by the State of Idaho is approved by the voters at the general election this November, it will be unconstitutional and void. Because of the extreme importance of this issue to the citizens of the State of Idaho, we should rule upon the merits of this case now. *Gumprecht v. City of Coeur d'Alene, supra; In re Petition of Idaho State Federation of Labor, supra.* Both the public treasury and public expectations deserve our immediate action on this important issue.

### III

This case is ripe for decision today. If this Court refuses to act, our inaction may well be misconstrued by others as suggesting that the initiative process can be utilized to circumvent other sections of the Idaho Constitution which prohibit the "legislature" from passing certain acts. For example, the Constitution prohibits the legislature from passing local or special laws in Art. 3, § 19.[2] *See also* Art. 7, § 6; Art.

---

2. **§ 19. Local and special laws prohibited.—** The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:
Regulating the jurisdiction and duties of justices of the peace and constables.
For the punishment of crimes and misdemeanors.
Regulating the practice of the courts of justice.
Providing for a change of venue in civil or criminal actions.
Granting divorces.
Changing the names of persons or places.
Authorizing the laying out, opening, altering, maintaining, working on, or vacating roads, highways, streets, alleys, town plats, parks, cemeteries, or any public grounds not owned by the state.
Summoning and impaneling grand and trial juries, and providing for their compensation.

Regulating county and township business, or the election of county and township officers.
For the assessment and collection of taxes.
Providing for and conducting elections, or designating the place of voting.
Affecting estates of deceased persons, minors, or other persons under legal disabilities.
Extending the time for collection of taxes.
Giving effect to invalid deeds, leases or other instruments.
Refunding money paid into the state treasury.
Releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any person or corporation in this state, or any municipal corporation therein.
Declaring any person of age, or authorizing any minor to sell, lease, or incumber his or her property.
Legalizing as against the state the unauthorized or invalid act of any officer.

7, § 11; Art. 3, § 1; Art. 9, § 5; and Art. 11, § 12. If the people, by a simple majority, can vote by initiative to do all of the acts which the legislature is prevented from doing, then many of the constitutional safeguards contained in the Idaho Constitution will become meaningless.

We, by our failure to act today, are building and fueling the expectations of the people that, when they go to the polls, they are participating in a lawful, constitutional and meaningful election. They are not. The lottery initiative violates Art. 3, § 20, of the Idaho Constitution. It is clearly an unconstitutional act,[3] and "an unconstitutional act is not a law." *State v. Village of Garden City, supra* at 524, 265 P.2d at 339.

We should issue the writ of prohibition and make it permanent.

BAKES, J., concurs.

Exempting property from taxation.
Changing county seats, unless the law authorizing the change shall require that two-thirds (2/3) of the legal votes cast at a general or special election shall designate the place to which the county seat shall be changed; provided, that the power to pass a special law shall cease as long as the legislature shall provide for such change by general law; provided further, that no special law shall be passed for any one county oftener than once in six (6) years.
Restoring to citizenship persons convicted of infamous crimes.
Regulating the interest on money.
Authorizing the creation, extension or impairing of liens.
Chartering or licensing ferries, bridges or roads.
Remitting fines, penalties or forfeitures.
Providing for the management of common schools.
Creating offices or prescribing the powers and duties of officers in counties, cities, townships, election districts, or school districts, except as in this constitution otherwise provided.
Changing the law of descent or succession.
Authorizing the adoption or legitimization of children.
For limitation of civil or criminal actions.
Creating any corporation.
Creating, increasing or decreasing fees, percentages, or allowances of public officers during the term for which said officers are elected or appointed.

3. It is to be noted that the special concurring opinion of Chief Justice Donaldson, agrees with this portion of the opinion, and states: "If the lottery passes, then [the] legislators ... can act in a constitutional manner to amend the constitution...." Thus, the votes of three members of this court are on record to the effect the lottery initiative, if passed, will be unconstitutional.