855 P.2d 868

Karen **WELDON**, in her capacity as Treasurer of Bonner County; Marie Scott, in her capacity as Auditor and Budget Officer of Bonner County; Tim Cochran, in his capacity as Assessor of Bonner County, and Evan "Chip" Roos, in his capacity as Sheriff of Bonner County, Plaintiffs–Respondents,

v.

**BONNER COUNTY TAX COALITION,** Bill Denman, Spokesman; and Signators on the petition requesting an initiative election to establish procedures for adopting a revised county budget and on the petition requesting a referendum regarding Bonner County's ad valorem tax increase for the 1993 fiscal year, respectively, Defendants–Appellants.

No. 20523.

Supreme Court of Idaho, Boise, June 1993 Term.

July 2, 1993.

John F. Magnuson, Coeur d'Alene, for defendants-appellants.

Jerry D. Mason, Coeur d'Alene, for plaintiffs-respondents.

McDEVITT, Chief Judge.

## BACKGROUND

In September of 1992, Bonner County, acting through its Board of County Commissioners, upon completion of its fiscal year budget-setting process, passed resolutions determining to set the aggregate Bonner County *ad valorem* property tax revenue to be levied for Bonner County fiscal year 1993 to fund the. county budget at a level in excess of that levied in fiscal year 1992. In response to this increase, the Bonner County Tax Coalition ("Coalition") spearheaded an effort to reject Bonner County's budget decision and implement a new county budget process. The Coalition's effort resulted in a referendum and an initiative being set for election in Bonner County. This suit was commenced by the plaintiffs to determine whether the referendum and initiative are proper means to reject an *ad valorem* tax levy and establish a budget process for a county.

## PRIOR PROCEEDINGS

On January 5, 1993, Bonner County and four Bonner County elected officials, Karen Weldon, Treasurer; Marie Scott, Auditor; Tim Cochran, Assessor; and Evan "Chip" Roos, Sheriff ("Elected Officials"), filed a complaint for declaratory judgment and a request for expedited review and conditional stay of election against the Coalition. In the complaint, Bonner County and the Elected Officials prayed for the following relief:

1. That the court declare that the budgetary approval process and tax levy is an administrative or executive action of

the Board of County Commissioners, and, thus, not subject to the referendum process set forth in Idaho Const. art. 3, § 1 and I.C. § 31–717;

2. That the court declare that the resolutions passed and the motions approved in the budget process do not constitute ordinances or an act or measure passed by the legislative body subject to the referendum process;

3. That the court declare that the budgetary process set forth in title 31, chapter 16, Idaho Code, is the exclusive manner by which county budgets can be set;

4. That the court declare that tax levies or budgetary appropriations cannot be set or rejected by initiative or referendum;

5. That the court declare that if the county budget or *ad valorem* tax can be rejected by referendum, the result would be the absence of a county budget or *ad valorem* tax levy for the county; and

6. That the court declare that the initiative proposed to set an ordinance procedure to modify county budgets and tax billing would be contrary to state statute and the Idaho Constitution.

On February 12, 1993, plaintiff Bonner County "requested that the case be dismissed with prejudice, with respect to the party of BONNER COUNTY, acting through its Board of Commissioners." The court granted the motion on the same day.

On February 19, 1993, the Coalition filed a motion to dismiss the Elected Officials' claims, pursuant to I.R.C.P. 12(b)(1) and (6), on the following grounds: (1) standing; (2) justiciability; and, (3) ripeness.

Also on February 19, 1993, the Coalition filed an answer to the complaint. In its answer, the Coalition set forth several defenses, including: (1) standing; (2) no actual controversy under the Declaratory Judgment Act, I.C. §§ 10–1201 to 10–1217; (3) no justiciable controversy; (4) Elected Officials are not real parties in interest; (5) no case or controversy; and, (6) ripeness. The Coalition prayed that the Elected Officials' complaint be dismissed with prejudice and that it be awarded attorney fees and costs.

A hearing on the Coalition's motion to dismiss was held on February 26, 1993. The minutes of the hearing reflect that the court ruled that the Elected Officials could bring this action.

On March 2, 1993, the Elected Officials filed a motion for summary judgment. On March 4, 1993, the Coalition filed a cross-motion for summary judgment. A hearing on the motions was held on March 15, 1993, the court noting that the Coalition had filed an alternative motion to stay enforcement of judgment and granting the Elected Officials' motion for summary judgment.

On March 16, 1993, the court entered three orders:

1. *Order Denying Stay:* The court entered an order denying the Coalition's alternative motion to stay the enforcement of the judgment. The court recognized that the action is declaratory in nature, the Elected Officials only seeking a declaration of the law applicable to the circumstances set forth in the complaint.

2. *Order Denying Motion to Dismiss:* The court entered an order denying the Coalition's motion to dismiss. It ruled that "[a]s elected officials, the duties of each Plaintiff are sufficiently broad that they have the right to seek declaratory judgment regarding the propriety of referendum and initiative actions regarding the county budgeting and taxing process," citing *Miles v. Idaho Power Co.,* 116 Idaho 635, 778 P.2d 757 (1989), for Idaho's standing rule. The court also rejected the Coalition's argument regarding lack of justiciability, citing *Gumprecht v. City of Coeur d'Alene,* 104 Idaho 615, 661 P.2d 1214 (1983).

3. *Opinion and Order on Summary Judgment:* The court entered an opinion and order granting the Elected Officials' motion for summary judgment. The court framed the sole issue as "whether Idaho law allows voter referendum review of budget decisions of the county commissioners. The answer is no." It ruled that "[t]he voters may only demand a referendum vote on acts or measures of a legislative character ..., [that] [t]he budget decisions of the county commis-

sioners in approving the fiscal 1993 budget and fixing the property tax levies are administrative/executive decisions, not legislative acts or measures ..., [and] [t]herefore, the Idaho Constitution [art. 3, § 1] and Idaho Code § 31–717 preclude the voters of Bonner County from demanding a referendum vote on budget decisions of the county commissioners." It also ruled that since local regulations cannot conflict with general state laws, "any referendum procedure for reviewing county budget decisions [pursuant to Bonner County Ordinance No. 141] would be improper and county officials would be acting in excess of their jurisdiction in holding such referendum vote." A judgment to this effect was filed on the same day.

Also on March 16, 1993, the Coalition filed a notice of appeal pursuant to I.A.R. 11(a)(1), appealing from the judgment entered by the district court.

### ISSUES ON APPEAL

On appeal, the Coalition raises the following issues:

I. Do the Elected Officials have standing to bring this action?

II. Have the Elected Officials asserted justiciable claims?

III. Have the Elected Officials alleged a "case" or "controversy" under the Declaratory Judgment Act?

IV. Do the initiative and referendum address matters within the scope of Idaho Const. art. 3, § 1?

V. Is the Board of County Commissioners' determination as to the aggregate amount of *ad valorem* revenue to be levied a legislative or executive function?

### ANALYSIS

#### I.

The Coalition phrases the issue as "standing," but its brief and the argument of counsel also deal with *res judicata,* or claim preclusion. We will address standing and *res judicata* separately.

#### A. *Standing.*

■ In *Miles v. Idaho Power Co.,* 116 Idaho 635, 778 P.2d 757 (1989), which was a declaratory judgment action, this Court thoroughly set forth the fundamentals of the doctrine of standing:

The doctrine of standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated. *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). While the doctrine is easily stated, it is imprecise and difficult in its application. *O'Hair v. White,* 675 F.2d 680 (Former 5th Cir. 1982). However, the major aspect of standing has been explained:

The essence of the standing inquiry is whether the party seeking to invoke the court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult constitutional questions." As refined by subsequent reformation, this requirement of "personal stake" has come to be understood to require not only a "distinct palpable injury" to the plaintiff, but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct. (Citations omitted.)

*Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

Thus, to satisfy the case or controversy requirement of standing, litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury. *Id.* at 79, 98 S.Ct. at 2633.

*Miles,* 116 Idaho at 641, 778 P.2d at 763.

The parties seeking relief are elected officials of Bonner County; the treasurer, the auditor, the assessor, and the sheriff. They allege that the Coalition's referendum and initiative are unlawful, in that they

embrace matters (the county budget process) that exceed the lawful scope of referenda and initiatives. They further assert that as elected officials, charged with various duties that require a certain amount of money to perform, they would be injured by the Coalition's referendum and initiative to the extent that they would not be financially able to perform their lawful duties.

The Idaho Code specifies the duties of the Elected Officials. Among other duties, the auditor "shall be the budget officer of his [or her] county...." I.C. § 31–1602. The treasurer is charged with "[r]eceiving all moneys belonging to the county, and all other moneys by law directed to be paid to [the treasurer], safely keep the same, and apply and pay them out, rendering account thereof as required by law." I.C. § 31–2101(1). The sheriff, while primarily charged with "enforcing all penal provisions and statutes of the state, ..." is also charged with duties that necessarily require a sufficient budget to carry out, such as serving notice of process and keeping various records. I.C. § 31–2202. The assessor is charged with assessing all property in the county. I.C. § 63–201.

The duties of the Elected Officials, as set forth in the Idaho Code, establish the "personal stake" required in order to have legal standing as set forth in *Miles*, 116 Idaho at 641, 778 P.2d at 763. In other words, a "distinct palpable injury" would be suffered by the Elected Officials if the referendum and initiative pass because they would be unable to perform their lawful duties, and a " 'fairly traceable' causal connection" does exist between this claimed injury and the Coalition's referendum and initiative. *Miles*, 116 Idaho at 641, 778 P.2d at 763. We hold that the Elected Officials have standing to maintain this action.

### B. *Res Judicata or Claim Preclusion.*

The Coalition also brings an argument closely related to standing. It argues that since Bonner County voluntarily dismissed its claims with prejudice, the Elected Officials are now barred from maintaining this action. This is a *res judicata*, or claim preclusion, argument.

We have recently discussed the dynamics of *res judicata*. In *Diamond v. Farmers Group*, 119 Idaho 146, 804 P.2d 319 (1990), we reaffirmed the "transactional" approach to *res judicata*. The "transactional" approach provides:

> [I]n an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim but also as to every matter which might and should have been litigated in the first suit.

*Diamond*, 119 Idaho at 150, 804 P.2d at 323, citing *Joyce v. Murphy Land & Irrig. Co.*, 35 Idaho 549, 208 P. 241 (1922). In the instant case, we do not have an action between the *same* parties, since Bonner County is not a party to this action. In order for the Coalition to succeed with its argument, the Elected Officials would have to be in *privity* with Bonner County for purposes of this suit.

The privity, or "privies," requirement means:

> Plaintiff was not a party to [the former] action. He is therefore not concluded by a judgment rendered therein unless he derives his interest from one who was a party to it, that is, unless he is in privity with a party to that judgment.

*Foster v. City of St. Anthony*, 122 Idaho 883, 888, 841 P.2d 413, 418 (1992), quoting *Kite v. Eckley*, 48 Idaho 454, 459, 282 P. 868, 869 (1929). The gist of the Coalition's argument is that since the Elected Officials were elected officials of *Bonner County*, and since Bonner County dismissed its claims against the Coalition with prejudice, the Elected Officials are now barred, by *res judicata*, from maintaining this action. An examination of Idaho cases dealing with privity and privies reveals that it is not the status of the party against whom *res judicata* imperils that is determinative, but whether that person "derives [its] interest from one who was a party to [the former action]...." *Kite*, 48 Idaho at 459, 282 P. at 869. The Elected Officials are not under

**36**

the control or direction of Bonner County, acting through its Board of County Commissioners. Instead, the Elected Officials, acting in their respective official capacities, represent the people of Bonner County. The Elected Officials' interest in this action does not derive from Bonner County, acting through its Board of County Commissioners, but from the duties of their offices. We hold that the Elected Officials are not in privity with Bonner County, and, therefore, we reject the Coalition's *res judicata* argument.

## II. and III.

In *Miles*, this Court stated:

> A prerequisite to a declaratory judgment action is an actual or justiciable controversy. *Harris v. Cassia County*, 106 Idaho 513, 681 P.2d 988 (1984). Justiciability is generally divided into subcategories—advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions.

*Miles*, 116 Idaho at 639, 778 P.2d at 761. In this portion of its argument, the Coalition argues: (1) that this Court's opinion in *Associated Taxpayers of Idaho v. Cenarrusa*, 111 Idaho 502, 725 P.2d 526 (1986),[1] wherein "[a] majority of the Court rejected plaintiff's argument, holding that the plaintiff's attempt to prohibit the [lottery] initiative election [prior to the general election] failed to present a justiciable controversy" controls this case, and; (2) that the initiative and referendum are merely proposals, and, as such, fail to present a case or controversy for purposes of the Declarato-

ry Judgment Act, citing *Harris*, 106 Idaho at 516, 681 P.2d at 991.

The Court's opinion in *Associated Taxpayers of Idaho* does not hold as the appellants represent it. Instead, it is merely an order denying an application for a writ of prohibition, without rationale or holdings, and it does not control this case.

The *Harris* case sets forth the pivotal elements of a justiciable controversy:

> A "controversy" in this sense must be one that is appropriate for judicial determination.... A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.... The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Harris*, 106 Idaho at 516, 681 P.2d at 991, quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (citations omitted).

In *Gumprecht v. City of Coeur d'Alene*, 104 Idaho 615, 661 P.2d 1214 (1983), this Court was faced with an original proceeding wherein the petitioners sought to restrain an initiative election which, if passed, would have placed height restrictions on buildings near Lake Coeur d'Alene. "The narrow and important issue of first impression with which we [were] presented [was] whether local zoning ordinances may be

---

1. The *Associated Taxpayers of Idaho* opinion reads in whole:

WHEREAS, Petitioners filed an APPLICATION FOR WRIT OF PROHIBITION with supporting brief and affidavit of Russell Westerberg; and thereafter served copies of the Application to all real parties in interest and potential parties in interest, including Pete Cenarrusa, Secretary of State; Vote Yes for Idaho's Economy; Idahoans for the Right To Vote On Lotteries; Idaho Allied Christian Forces, Inc., and thirty-one individuals who originally signed the lottery initiative petition; and the Court subsequently granted Motions to Intervene by Mike Blackbird, et al, and Help Idaho Thrive; and the Court received

Answers and supporting documents by Cenarrusa, Vote Yes for Idaho's Economy, Mike Blackbird, et al, and Help Idaho Thrive; and thereafter, the Court set oral arguments on September 5, 1986; and

WHEREAS, after oral argument, the Court having considered all of the above documents and arguments; and

NOW, THEREFORE, IT IS HEREBY ORDERED, that the APPLICATION FOR WRIT OF PROHIBITION be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT, attorney fees and costs be, and hereby are, DENIED. *Associated Taxpayers of Idaho*, 111 Idaho at 502, 725 P.2d at 526.

enacted or amended in Idaho through an initiative election." *Gumprecht*, 104 Idaho at 616, 661 P.2d at 1215. We held *Perrault v. Robinson*, 29 Idaho 267, 272, 158 P. 1074, 1075 (1916), to be controlling:

> The question is not, as in most of the cases cited, may an election which is provided for by law be restrained, but is, have the mayor and council of Boise jurisdiction to call an election which is unauthorized by law and thereby involve the taxpayers of that city in a useless expense?

*Gumprecht*, 104 Idaho at 617, 661 P.2d at 1216. We also held that review of the writ was proper even though the election had not occurred because "[i]f an initiative election is an improper means of adopting or amending zoning ordinances in Idaho, then the city council of Coeur d'Alene would be acting in excess of its jurisdiction in holding the election." *Gumprecht*, 104 Idaho at 617, 661 P.2d at 1216. We concluded "that review of a petition for prohibition is proper where, as in this case, the resolution of an important undecided question of law will necessarily decide the propriety of the election." *Gumprecht*, 104 Idaho at 617, 661 P.2d at 1216.

■ We hold that *Gumprecht* controls this case. We note that *Gumprecht* was not a declaratory judgment action, instead involving an application for a writ of prohibition. However, we deem this distinction to be unimportant. Like *Gumprecht*, this case involves a proposed election. In this case, both the referendum and initiative are set for election, and the critical issue is whether Idaho law providing for referenda and initiative encompasses county budget decisions. The *only* thing that is uncertain is whether the voters of Bonner County will approve or disapprove the measures, which has no effect on the issue before this Court. As stated in *Miles:*

> It is clear that this issue will be before us either now or in the future, and a declaration now of the various rights of the parties will certainly afford a relief from uncertainty and controversy in the future. "Since we are persuaded that 'we will be in no better position than we

are now' to decide this question, we hold that it is presently ripe for adjudication."

*Miles*, 116 Idaho at 643, 778 P.2d at 765, quoting *Duke Power Co.*, 438 U.S. at 82, 98 S.Ct. at 2635. We hold that the instant case presents a justiciable controversy for purposes of the Declaratory Judgment Act.

## IV. and V.

The Coalition argues that the Board of County Commissioners passed the resolutions establishing the fiscal year 1993 budget as a legislative body, and that the proposed referendum and initiative are proper means to reject the commissioners' decision and implement a new budget process.

The framers of the Idaho Constitution provided for the power of referendum and initiative:

> The people reserve to themselves the power to approve or reject at the polls any *act or measure* passed by the legislature. This power is known as the referendum, and legal voters may, under such conditions and in such manner as may be provided by acts of the legislature, demand a referendum vote on any act or measure passed by the legislature and cause the same to be submitted to a vote of the people for their approval or rejection.
>
> The people reserve to themselves the power to propose laws, and enact the same at the polls independent of the legislature. This power is known as the initiative, and legal voters may, under such conditions and in such manner as may be provided by acts of the legislature, initiate any desired legislation and cause the same to be submitted to the vote of the people at a general election for their approval or rejection.

Idaho Const. art. 3, § 1 (emphasis added). The legislature, complying with the constitutional command, provided the conditions and the manner governing the power of referendum and initiative:

> The board of county commissioners of each county shall provide by ordinance for direct legislation by the people through the initiative and referendum. Minimum requirements of the ordinance

adopted shall be as follows: (1) petitioners for initiative or referendum shall be equal to twenty per cent (20%) of the total number of voters registered to vote at the last general election in the county; (2) petitions for referendum shall be filed not less than sixty (60) days following the final adoption of the ordinance to be subject to referendum; (3) a special election for initiative or referendum shall be provided not more than ninety (90) days following the certification of the petition, provided that in the event a general or primary election will occur within the ninety (90) days, the initiative or referendum shall be submitted at the time of the general or primary election; (4) requirements for signature, verification of valid petitions, printing of petition, and time limits, except as expressly modified herein, shall be as nearly as practicable as provided in sections 34–1701 through 34–1705, Idaho Code.

I.C. § 31–717. Finally, Bonner County, complying with the statutory command, provided by ordinance for direct legislation by the people of Bonner County through the initiative and referendum:

### BONNER COUNTY ORDINANCE NUMBER 141

BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF BONNER COUNTY, IDAHO.

To comply with *Idaho Code* § 31–717 the Bonner County Commissioners hereby adopt this Ordinance for direct legislation by the people through initiative and referendum.

1. Referendum shall be the right of the legal voters of Bonner County to approve or reject at the polls an *act or measure* passed by the legislative body of Bonner County.

2. Initiative shall be the power of the legal voters of Bonner County to propose county ordinances and laws and to enact them at the polls.

3. Neither referendum nor initiative shall be available to pass, reject, or affect laws, ordinances, acts, or measures of Bonner County or the Bonner County Commissioners if prohibited by Idaho laws or the Idaho Constitution.

4. Petitioners for initiative or referendum shall be equal to twenty percent (20%) of the total number of voters registered to vote at the last general election in Bonner County. Petitioners must be legal voters and must be registered to vote at the next general election.

5. Petitions for initiative or referendum shall be filed not less than sixty (60) days following the final adoption of the ordinance to be subject to referendum.

6. A special election for initiative or referendum shall be provided not more than 90 days following certification of the petition; provided however, in the event a general or primary election will occur within the 90 day period, the initiative or referendum shall be submitted at the time of the general or primary election.

7. The following shall be substantially the form for petition for initiatives and referendums:

.　　　.　　　.　　　.　　　.

(Emphasis added.)

 As our emphasis reveals, referenda and initiatives in Idaho are constrained to addressing "acts" or "measures" passed by a legislative body. In other words, a referendum can only seek to reject an "act" or "measure," and an initiative can only seek to implement an "act" or "measure." The Coalition's referendum seeks to reject a *process*, specifically the county budgeting process as it is set forth in title 31, chapter 16, Idaho Code. The Coalition's initiative seeks to impose a limit on the amount of Bonner County's *ad valorem* property tax revenue, *i.e.*, the same level as the immediately preceding calendar year. The Coalition does not seek to reject or propose *law*, but a *process*. The county budgeting process, which results in an *ad valorem* levy, is not an "act" or "measure," but instead it is merely the *result* of the statutory process set forth in the County Budget Law, title 31, chapter 16, Idaho Code. We reject the Coalition's argument that the budget process is a law and is a legislative act. It is neither an "act" or a

"measure," and, therefore, we hold that Idaho's referendum and initiative laws are not proper means to reject and/or implement a county budget process.

For the reasons set forth above, we affirm the decision of the district court.

Costs to respondents.

BISTLINE, JOHNSON, TROUT and SILAK, JJ. concur.