141 P.3d 1123

**In the Matter of Initiative Petition for a Ten Commandments Display.**

**CITY OF BOISE CITY, a municipal corporation, Plaintiff–Respondent,**

v.

**KEEP THE COMMANDMENTS COALITION, an unincorporated association, Bryan J. Fischer, an individual, and Melissa B. Swindell, an individual, Defendants–Appellants.**

No. 31308.

Supreme Court of Idaho.
Boise, December 2005 Term.

Aug. 14, 2006.

Troupis Law Office, Meridian, for Appellants. Christ T. Troupis argued.

Cary B. Colaianni, Boise City Attorney, Boise, for Respondent. Valencia J. Bilyeu argued.

SCHROEDER, Chief Justice.

The Keep the Commandments Coalition (the Coalition) filed an Initiative Petition for a Ten Commandments Display (Petition) with the city clerk demanding the enactment of a proposed ordinance for the Ten Commandments display to be placed in Julia Davis Park. The City of Boise City (the City) filed a Petition for Declaratory Judgment in which it requested the district court to decree that the City is not authorized or required to hold an initiative election in this case. The district court granted the declaratory judgment. The Coalition appealed.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The Fraternal Order of Eagles donated a Ten Commandments monument to the City in 1965 which was placed in Julia Davis Park. The Mayor and City council removed the Ten Commandments display from the park and moved it to St. Michael's Cathedral in March 2004. The Coalition, an unincorporated association, filed the Petition with the Boise City Clerk, respectfully demanding that the City enact a proposed ordinance for placement of a Ten Commandments display in Julia Davis Park. The Petition stated the following:

We the undersigned citizens and qualified electors of the City of Boise respectfully demand that the following proposed ordinance, to-wit:

Be it ordained by the mayor and council of the City of Boise that, within 60 days of the effective date of this Ordinance, the Boise Parks and Recreation Department shall cause to be erected in Julia Davis Park, in the same location which formerly displayed the Fraternal Order of Eagles Ten Commandments monument, the following display: a Ten Commandments monument substantially similar in size, composition, and content to that given to the city in the 1960s by the Fraternal Order of Eagles and moved to St. Michael's Cathedral in March, 2004; within 20 feet of the Ten Commandments monu-

ment, a second monument of substantially similar composition and size, containing an excerpt from Jefferson's Virginia Statute for Religious Freedom. In the front of the monuments, and plainly visible to passers-by, shall be a plaque stating the city's commitment to religious freedom and acknowledgement of the secular influence of the texts displayed on the monuments.

This display shall, to the extent practical, be identical to the display erected at the Bannock County Courthouse in Pocatello, and upheld in the case of *Albanese v. Bannock County,* Case # 93–CV–115, U.S. District Court, District of Idaho; and, this ballot in question shall be submitted to the qualified electors of the City of Boise, for their approval or rejection at the general election to be held on the 2nd day of November, A.D., 2004, or on such date as may be set by the Boise City Clerk pursuant to Idaho Code Section 34–106, and each for himself says: I have personally signed this petition; I am a qualified elector of the City of Boise; my residence and post office are correctly after my name.

The Clerk verified the signatures on the petitions and concluded that there were 10,721 signatures of qualified electors, a sufficient number to place the Petition on the ballot.

The Petition was presented to the City council, which refused to place it on the ballot. In a letter dated June 22, 2004, the City informed the Coalition that the matter was not a proper subject for the initiative process since the Petition improperly sought to implement an administrative act, rather than a legislative act, through an initiative election. The City directed the Boise City Attorney to file an action concerning this matter, and on August 27, 2004, the City filed a Petition for Declaratory Judgment. The City asked the district court to declare that the City is not authorized or required to hold an initiative election in this case.

The district court granted the declaratory judgment, ruling that the City is not authorized to hold an initiative election upon the Petition, reasoning that the City had a process for the placing of monuments in city

parks at the time of the proposed initiative. The Coalition appealed.

## II.

### STANDARD OF REVIEW

■ The standard of review for questions of law is one of free review. *Electrical Wholesale Supply Co., Inc. v. Nielson,* 136 Idaho 814, 825, 41 P.3d 242, 253 (2001).

## III.

### THE PROPOSED INITIATIVE IS NOT RIPE FOR REVIEW

■ Article III, Section 1 of the Idaho Constitution reserves power to propose and enact legislation to the people independent of the legislature. It provides in part:

> The people reserve to themselves the power to propose laws, and enact the same at the polls independent of the legislature. This power is known as the initiative, and legal voters may, under such conditions and in such manner as may be provided by acts of the legislature, initiate any desired legislation and cause the same to be submitted to the vote of the people at a general election for their approval or rejection.

The manner in which the initiative power may be exercised is set forth in I.C. § 34–1701, *et seq.,* and § 34–1801, *et seq.* Idaho Code § 50–501 states, "[t]he city council of each city shall provide by ordinance for direct *legislation* by the people through the initiative and referendum." The City of Boise City achieved this when it enacted Boise Municipal Code § 1–22–01, *et seq.* Section 1–22–01 provides, "The People of this City shall have the right to enact ordinances through the initiative process, and to repeal ordinances through the referendum process, according to the procedures set forth herein." The language of I.C. § 50–501 indicates that initiatives and referenda are to be used for legislation. This Court has held, "referenda and initiatives in Idaho are constrained to addressing 'acts' or 'measures' passed by a legislative body. In other words, a referendum can only seek to reject an 'act' or 'measure,' and an initiative can only seek to implement an 'act' or 'measure.'" *Weldon v. Bonner County Tax Coalition,* 124 Idaho 31, 38, 855 P.2d 868, 875

(1993). If a subject is legislative in nature, it is appropriate for action by initiative. On the other hand, if the proposed initiative is administrative in nature, it falls outside the scope of action allowable by initiative. There is no bright line rule that clearly distinguishes what is legislative in nature, as opposed to administrative in nature.

■ The issue in this case is whether the initiative process should be interrupted by the Court to consider the validity of the initiative on an otherwise qualified initiative petition prior to submission to the voters. Such action would be consistent with this Court's holdings in *Weldon* and *Gumprecht v. City of Coeur d'Alene,* 104 Idaho 615, 661 P.2d 1214 (1983), and the reasoning in *Perrault v. Robinson,* 29 Idaho 267, 158 P. 1074 (1916). The alternative is that recognized by this Court in *Noh v. Cenarrusa,* 137 Idaho 798, 53 P.3d 1217 (2002), in which the Indian Gaming Initiative qualified to appear on the ballot in the November 2002 general election. *Noh,* 137 Idaho at 799, 53 P.3d at 1218. The Petitioners sought a declaration that the Indian Gaming Initiative violated the Idaho Constitution and a writ prohibiting the initiative from appearing on the ballot. *Id.* This Court noted that the traditional ripeness doctrine requires a petitioner to prove: "1) that the case presents definite and concrete issues, 2) that a real and substantial controversy exists, and 3) that there is a present need for adjudication." *Id.* at 801, 53 P.3d at 1220. This Court concluded that *Noh* did not meet the elements of the traditional ripeness test. *Id.* The Court reasoned that there was not a real controversy since the Indian Gaming Initiative was only a proposal and it had not become a law. *Id.* If the initiative did not pass, there would be no need for an adjudication as to its validity. The subject was not ripe for resolution and might never become ripe. The Court concludes that the reasoning in *Noh* is sound.

The approach in *Weldon, Gumprecht,* and *Perrault* takes the court into controversies that may never become realities, calling for rulings when the initiative might never pass or might be amended or set aside by the legislative authority. It may prevent the voters from articulating a view by the ballot

that could be instructive to the legislative authority, whichever way the votes are cast. The benefits of public debate through the initiative process may be lost. Resolution of a matter of public concern may be delayed while litigation pends. The hard work of obtaining qualifying signatures may be wasted in the event the Court finds a single flaw in the initiative, necessitating a new petition process even though the flaw could be cured by the legislature or stricken by the courts should the initiative pass. Proponents of an initiative must face the cost of defending the initiative before it ever has a chance to pass, erecting still another barrier to obtaining the decision of the voters.

Doubtless there may be a cost in conducting an election on an initiative that ultimately fails, or is ruled invalid, or set aside by the legislature. However, the initiative process arises from the Idaho Constitution, Article III, Section 1, and extends to the cities by legislative mandate. I.C. § 50–501. It is not an inconvenience created by rabble rousers and malcontents to vex established authority. The initiative process is a mandate, significant enough to be embodied in the Idaho Constitution, that enables voters to address issues of concern. Sometimes it compels authorities to listen when nothing else will. To the extent the conclusion in this case is inconsistent with *Weldon, Gumprecht* and *Perrault* they are overruled.

In this case the initiative may not pass in which case the issue of whether it steps over the bounds of a proper initiative would be moot. The initiative may pass and be the proper subject of an adjudication, or the City council may exercise its authority to amend or reject it. The validity of the action sought by the petition may or may never be the proper subject for Court action. Just as the Court would not interrupt the legislature in the consideration of a bill prior to enactment, the Court will not interrupt the consideration of a properly qualified initiative. The petition qualifies for the ballot for consideration by the voters.

## IV.

### CONCLUSION

The decision of the district court to grant the City's Petition for Declaratory Judgment

is reversed. The Coalition is allowed costs. No attorney fees are allowed.

Justices EISMANN, BURDICK and JONES concur.

TROUT, J., dissenting.

The Court today allows the Coalition's petition to proceed to the ballot because it concludes the case is not ripe for review. Presumably due to the perceived lack of ripeness, the Court does not determine whether the placement of a monument in a park is legislative, and therefore the proper subject matter for the initiative process, or whether it is administrative, in which case it exceeds the lawful scope of an initiative. I must respectfully dissent because I believe the matter is ripe for review. Furthermore, I believe the administrative nature of what the Coalition seeks precludes the use of an initiative election.

*Ripeness*

The Court frames the issue as "whether the initiative process should be interrupted ... to consider the *validity of the initiative* on an otherwise qualified initiative petition prior to submission to the voters." (emphasis added). The subsequent analysis of case law suggests the Court is making no distinction between the constitutional validity of the proposal and the constitutional validity of the process. The process is controlled by Article III, Section 1, of the Idaho Constitution, whereas the proposal is governed by the will of the people. It is not until the proposal becomes law that it must satisfy all constitutional provisions. This distinction is especially important here, where neither party is challenging or defending the constitutionality of placing a certain monument in a park. Rather, the challenge is whether this is a legislative matter which is properly subject to a vote of the people. In short, the Court's blurring of the line between process and proposal has led it to mistakenly overrule *Weldon, Gumprecht,* and *Perrault,* three cases which do not conflict with *Noh,* the case on which the Court relies.

The question presented in *Gumprecht v. City of Coeur d'Alene,* 104 Idaho 615, 616,

661 P.2d 1214, 1215 (1983) was "whether local zoning ordinances may be enacted or amended in Idaho through an initiative election." If an initiative election were not the proper means for enacting zoning ordinances, the Court explained, then the city council "would be acting in excess of its jurisdiction in holding the election." *Id.* at 617, 661 P.2d at 1216. Similarly, in *Weldon v. Bonner County Tax Coalition,* 124 Idaho 31, 37, 855 P.2d 868, 874 (1993), the critical issue was "whether Idaho law providing for referenda and initiative encompasses county budget decisions." Likewise, the concern in *Perrault* was whether the operation of a Sunday movie theater was beyond the scope of a local referendum. *Perrault v. Robinson,* 29 Idaho 267, 158 P. 1074 (1916). *Gumprecht* did not involve a constitutional challenge to a zoning ordinance (such as a takings claim); the issue in *Weldon* was not whether a certain budget decision violated a tax provision in the constitution; and there was no First Amendment challenge to the Sunday operation of movie theatres in *Perrault.* Instead, these cases presented the exact question confronting the Court today: Whether the proposed initiative fell within the scope of Article III, Section 1, of the Idaho Constitution. In other words, the focus was on the initiative process itself—whether the subject matter of the initiative was appropriate given the constraints of Article III, Section 1, which limits the initiative power to legislative matters.

Clearly distinguishable is *Noh,* a case in which the petitioners sought to prohibit an initiative from appearing on the ballot because the proposal itself—allowing Indian gaming—was allegedly unconstitutional, not because the subject of Indian gaming was beyond the scope of the initiative process. *Noh v. Cenarrusa,* 137 Idaho 798, 799, 53 P.3d 1217, 1218 (2002). The alleged constitutional infirmities included a violation of the Idaho Constitution's prohibition against gambling and equal protection violations. Thus, unlike *Gumprecht, Weldon, Perrault* and the instant case, the Court in *Noh* recognized that in the case before it, "[t]here was no challenge . . . that the subject matter is *beyond the reach of the initiative.*" *Id.* at 803, 53 P.3d at 1222 (emphasis added). In fact, in declining to consider the constitutionality of the Indian Gaming Initiative, the Court adopted the rationale of *Associated Taxpayers of Idaho, Inc. v. Cenarrusa,* 111 Idaho 502, 725 P.2d 526 (1986), which it described as involving an initiative "on a subject appropriate for the initiative process, though the substance of the initiative might violate the state constitution." *Noh,* 137 Idaho at 802, 53 P.3d at 1221. In *Noh,* the Court concluded first that the petitioners had no standing because they had not alleged an injury in fact; they had only argued they would suffer injuries *if* the initiative became law. 137 Idaho at 800, 53 P.3d at 1219. The Court next determined the case was not ripe because the initiative had not become law and there was no present need for adjudication. *Id.* at 801, 53 P.3d at 1220. It seems clear that, other than issues relating to Article III, Section 1, a constitutional challenge to an initiative will likely never be justiciable because an initiative is simply a *proposal* and not a law. The initiative is analogous to the debates that take place in the legislature, and until those discussions turn into law, a complaining party would be hard pressed to satisfy traditional standing and ripeness requirements.

Thus, I agree with the Court that "the reasoning in *Noh* is sound." But, the reasoning in *Noh* is inapplicable for the same reason *Weldon, Gumprecht* and *Perrault* should not be overruled: The question here is not whether a proposal is constitutional, as in *Noh,* but whether the initiative election itself would be a proper exercise of the peoples' power, as in *Weldon, Gumprecht* and *Perrault.* A fair reading of *Noh,* together with the *Weldon* line of cases, suggests a proposal need not be "constitutional," but must be legislative. These two concepts are not mutually exclusive, so the Court's overruling of *Weldon, Gumprecht* and *Perrault* is as unnecessary as it is erroneous.

Because *Noh* is distinguishable from the instant case, I believe the case before us today is ripe for review, as were the issues in *Weldon, Gumprecht* and *Perrault.* The issue before the Court is merely whether the matter qualifies for the initiative process. That issue is ripe because there is a controversy today as to whether the proposed act is

legislative or administrative and there is a present need for adjudication to make that determination before the City is required to fund an expensive election. Thus, unlike *Noh*, harm here will occur *before* the vote is taken; not only if the measure passes. Holding otherwise changes the inquiry from whether a proposal is legislative such that it may be placed before the voters, to whether a proposal that has already gone through the initiative process and passed is legislative. If this determination need not be made until the process is complete, then the threshold requirement that only legislative matters may be voted on becomes meaningless.

*Legislation or Administration*

The Court correctly identifies the subject of the Coalition's petition as an ordinance for the placement of a monument in a city park. As the Court notes, if a subject is legislative, it is appropriate for action by initiative, whereas if the subject is administrative, it may not be enacted through an initiative election. I agree with the Court's observation that there is no bright line rule clearly distinguishing legislative matters from administrative ones. Nevertheless, we may look to courts in other jurisdictions for guidance. Under any of the frameworks presented, the subject of the Coalition's petition is an administrative act that does not qualify for the initiative process.

One rule for distinguishing between legislative and administrative matters is that an initiative is legislative if it adopts a new policy or plan, whereas it is administrative if it merely pursues a policy or plan already adopted. *Worthington v. City Council of City of Rohnert Park*, 130 Cal.App.4th 1132, 31 Cal.Rptr.3d 59, 65 (2005). In this case, the requested action—the placement of a monument in the park—is clearly governed by an existing plan. The legislature has provided that the management of real property owned by a city rests with the judgment of the city council. I.C. § 50–1401. By an ordinance adopted in 1995, the Board of Park and Recreation Commissioners was given the responsibility to "direct the ornamenting, adorning, laying out and improving" of the City parks. Boise City Code § 2–05–04. A plan establishing the procedure for the placement of memorial plaques and monuments in City parks was adopted in 1999, five years before the Coalition's petition was submitted to the City. Together, I.C. § 50–1401, Boise City Code § 2–05–04, and the 1999 monument plan can be considered the enabling laws providing the basis for the very specific actions contemplated by the Coalition's petition. Because the Coalition seeks to place a monument in the park, an act that falls within the purview of an already adopted plan, the petition is an administrative act beyond the reach of the initiative process.

Another framework for distinguishing between the two has been used by the Supreme Courts of Kansas, Montana, and New Mexico. In addition to the making new law/executing existing law distinction, a relevant consideration is whether the act declares a general public purpose and provides ways to accomplish that purpose generally, in which case it is usually legislative; or whether it is an act that deals with a small segment of an overall policy question, in which case it is likely administrative. *City of Wichita v. Kansas Taxpayers Network, Inc.*, 255 Kan. 534, 874 P.2d 667, 672 (1994); *Town of Whitehall v. Preece*, 288 Mont. 55, 956 P.2d 743, 749 (1998); *Johnson v. City of Alamogordo*, 121 N.M. 232, 910 P.2d 308, 312 (1996). In this case, the Coalition's initiative petition dictating the size, wording and placement of a particular monument in a particular city park is clearly not a law of general applicability. Another consideration is that decisions requiring specialized knowledge and experience in municipal government may be characterized as administrative, even though they may also be said to involve the establishment of a policy. *City of Wichita*, 874 P.2d at 672. Under this framework, the project-specific petition that involves specialized knowledge and experience in park layout is clearly administrative in nature. Also, many have noted the initiative power is "restricted to measures which are quite clearly and fully legislative." 62 C.J.S. *Municipal Corporations* § 318; *City of Wichita*, 874 P.2d at 672; *Town of Whitehall*, 956 P.2d at 749.

In sum, under any of these analyses, the subject of the Coalition's petition is administrative, so it does not fall within the scope of the people's power to enact legislation. For these reasons, I respectfully dissent from the Court's opinion and would affirm the decision of the district court.