# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 52089

RAUL R. LABRADOR, in his official capacity
as the Idaho Attorney General,

    Petitioner,

v.

IDAHOANS FOR OPEN PRIMARIES, a
coalition of community groups and civic
organizations that includes: RECLAIM
IDAHO, IDAHO CHAPTER OF MORMON
WOMEN FOR ETHICAL GOVERNMENT,
and VETERANS FOR IDAHO VOTERS,

    Real Parties in Interest-Respondents,

and

PHIL MCGRANE, in his official capacity as
the Idaho Secretary of State,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, August 2024 Term
AMENDED
Opinion Filed: August 14, 2024**

**Melanie Gagnepain, Clerk**

**THE COURT'S PRIOR
OPINION DATED AUGUST 13,
2024 IS HEREBY AMENDED**

---

Original proceeding in the Idaho Supreme Court seeking writ of prohibition or mandate.

Petitioner's Verified Petition for a Writ of Prohibition or Mandate is <u>dismissed</u>.

Raúl R. Labrador, Idaho Attorney General, Boise, as Petitioner. Alan M. Hurst on the Petition and Brief.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Yvonne Dunbar, Chief, State General Counsel Division.

Ferguson Durham, PLLC, Boise, for Real Parties in Interest-Respondents. Deborah A. Ferguson.

---

1

BRODY, Justice

Raúl R. Labrador, in his official capacity as the Idaho Attorney General, filed a Verified Petition for Writ of Prohibition or Mandate seeking to prevent the Idahoans for Open Primaries Initiative ("the Initiative") from appearing on the 2024 general election ballot. The Attorney General asserts the Initiative should be excluded from the ballot for two reasons. First, he argues that all of the signatures on the initiative petition are null and void because they were obtained in violation of Idaho Code section 34-1815, which prohibits any person from knowingly making false statements or material omissions concerning the contents or effect of a proposed initiative for the purpose of obtaining signatures on the initiative petition. Second, he argues that the Initiative violates the single-subject rule of Article III, section 16 of the Idaho Constitution because it proposes two distinct changes to Idaho's election laws. The Attorney General seeks a writ of prohibition ordering the Secretary of State not to include the ballot title and number for the Initiative on the certified ballots he issues to the county clerks. Alternatively, he seeks a writ of mandate ordering the Secretary of State to declare all signatures supporting the Initiative to be invalid, and to withdraw his acceptance and certification of the Initiative so it does not appear on the final certified ballot. For the reasons explained below, we dismiss the Attorney General's Petition.

## I. BRIEF SUMMARY

Today the Idaho Supreme Court dismisses the Attorney General's Petition on procedural grounds. Allegations of fraud in the gathering of signatures in the initiative process are serious. Those allegations, however, must be adjudicated in the district court in the first instance. The Attorney General's Petition fundamentally misapprehends the role of this Court under the Idaho Constitution and the role of the Secretary of State under the initiative laws enacted by the Idaho Legislature. Article V, section 9 of the Idaho Constitution vests this Court with limited original jurisdiction to issue writs of prohibition and mandamus. Those writs are proper only when a state actor, like the Secretary of State, has a clear legal duty to act. While the laws governing initiatives are clear that signatures obtained through fraud are null and void, those same statutes do not authorize—and certainly do not create any clear legal duty on the part of—the Secretary of State to make such a factual determination. In this instance that authority rests with the district court. As for the Attorney General's assertion that the Initiative violates the Idaho Constitution's one-subject rule, that issue will not be ripe for review, unless and until, Idaho voters approve the Initiative at

2

the general election in November. Nothing in this decision should be interpreted to preclude the Attorney General from filing an action with the district court to adjudicate whether signatures on the petition should be declared null and void due to fraud.

## II. FACTS AND PROCEDURAL HISTORY

This is the second original action involving the Initiative to come before this Court. As we explained in more detail in *In re Verified Petition for Writs of Certiorari & Mandamus* (*Idahoans for Open Primaries v. Labrador)*, 172 Idaho 466, ___, 533 P.3d 1262, 1269 (2023), the Initiative is a voter initiative that seeks to reform Idaho's election laws by replacing Idaho's current closed party primary system with a non-partisan "top four primary election" and by implementing a "ranked choice" voting system for the general election. The Initiative is sponsored by Idahoans for Open Primaries and its coalition of member organizations, which includes Reclaim Idaho, Idaho Chapter of Mormon Women for Ethical Government, and Veterans for Idaho Voters (collectively, "Idahoans for Open Primaries").

Idahoans for Open Primaries began its efforts to qualify the Initiative for the 2024 general election by filing an initiative petition with the Secretary of State. As required by statute, the Secretary of State filed the petition in his office and immediately transmitted it to the Attorney General for the issuance of a certificate of review. The Attorney General issued his certificate of review on May 31, 2023, and, in it, opined that the proposed initiative contained a number of defects that rendered it unconstitutional. Relevant to this proceeding, the Attorney General stated that use of the term "open primary" was misleading because the proposed initiative would not create an open primary system but would, instead, "abolish[] the system of party primaries for most offices." The Attorney General also opined that the proposed initiative "address[ed] two distinct subjects"—"(1) the so-called 'open primary' that eliminates party primaries; and (2) the institution of ranked choice voting for the general election"—and, as such violated Idaho's "single-subject rule." *See* I.C. § 34-1801A ("An initiative petition shall embrace only one (1) subject and matters properly connected with it."); *see also* Idaho Const. art. III, § 16 ("Every act shall embrace but one subject and matters properly connected therewith[.]").

After the Attorney General issued his certificate of review, Idahoans for Open Primaries revised and finalized the initiative petition and sent it to the Secretary of State for the issuance of ballot titles. Of import here, the term "open primary" no longer appeared in the initiative petition, and the term "top four primary" was substituted in its place. On June 30, 2023, the Attorney

3

General delivered to the Secretary of State "short" and "general" ballot titles, both of which described the initiative petition as a measure to replace Idaho's current primary election system with a "nonparty blanket primary" and to "require ranked-choice voting" for the general election.

On July 10, 2023, Idahoans for Open Primaries filed a Verified Petition for Writs of Certiorari and Mandamus, alleging that the Attorney General's short and general ballot titles failed to comply with state law. *See Idahoans for Open Primaries*, 172 Idaho 466, 533 P.2d 1262. We granted the request for a writ of certiorari and, following our review, held that the Attorney General's ballot titles failed to substantially comply with Idaho Code section 34-1809. *Id.* at ___, 533 P.2d at 1277-78, 1287. Among other things, we determined that the ballot titles were deficient because the term "nonparty blanket primary" was not distinctive and did not accurately describe the new primary system proposed by the Initiative. *Id.* at ___, 533 P.3d at 1279. However, we also rejected Idahoans for Open Primaries' argument that the ballot titles should instead use the term "open primary," concluding that that term "also fails to adequately describe what the Initiative proposes." *Id.*; *see also id.* at ___, 533 P.3d at 1280 (rejecting Idahoans for Open Primaries' "argu[ment] that 'open primary' accurately describes the Initiative's primary system"). We explained:

> An "open primary" is its own type of primary system within a party-run primary framework. *See State Primary Election Types*, Nat'l Conf. of State Legislatures, (Jun. 22, 2023), https://www.ncsl.org/elections-and-campaigns/state-primary-election-types. "In an open primary, voters may choose privately *in which primary to vote*." *Id.* (emphasis added). Thus, an open primary system exists where political parties hold independent party primaries to select party nominees and allow anyone, regardless of party affiliation, to vote in their primary. *Id.* The Initiative does not describe an "open primary" system because it does not propose retaining the separate, party-run primary system currently in place. *See* I.C. § 34-703; *see also* [*Cal. Democratic Party v. Jones*, 530 U.S. 567, 576 n.6] ("An open primary differs from a blanket primary in that, although as in the blanket primary any person, regardless of party affiliation, may vote for a party's nominee, his choice is limited to that party's nominees for all offices." (emphasis omitted)).

*Id.* at ___, 533 P.3d at 1279. We also observed that Idaho previously had a true "open primary" system—i.e., a system in which a voter could "vote in the primary election without prior registration as a member of a political party," but the voter was required to "choose a single political party for which to cast his/her votes in the primary." *Id.* (quoting *Idaho Republican Party v. Ysursa*, 765 F. Supp. 2d 1266, 1269 (D. Idaho 2011)). Ultimately, we concluded that "an 'open primary' means something significantly different than what is proposed by the Initiative," and that

4

"[u]se of 'open primary' in this state would not be distinctive because it does not accurately distinguish the new voting system the Initiative proposes from Idaho's previous open primary system." *Id.* at ___, 533 P.3d at 1279–80. Instead, we found that "the most accurate description for the type of primary proposed in the Initiative is a 'top four primary.'" *Id.* at ___, 533 P.3d at 1288.

After we granted the writ of certiorari, the Attorney General submitted revised ballot titles that, among other things, replaced the previous references to a "nonparty blanket primary" with the term "top-four primary." *See id.* at ___, 533 P.3d at 1287–88. We concluded that the revised short and general ballot titles substantially complied with the requirements of Idaho Code section 34-1809, and we certified them to the Secretary of State on August 16, 2023.

Upon receiving the official ballot titles from the Secretary of State, Idahoans for Open Primaries began gathering signatures to qualify the Initiative for placement on the November 2024 general election ballot. The record before us shows that, at a kickoff and training event on August 19, 2023, representatives of Idahoans for Open Primaries and its member organizations stated numerous times that the Initiative would create and/or restore an "open primary" system in Idaho. They also instructed signature gatherers to tell potential signers that the purpose of the Initiative is to implement "open primaries," and to remind them that Idaho "had open primaries for 80 years." The Attorney General has submitted evidence in support of the Petition suggesting that at least some signature gatherers followed those instructions, using the words "open primaries," rather than "top-four primary," to describe the aim of the Initiative and omitting any discussion that the Initiative would also implement ranked-choice voting in the general election. Signature gatherers also carried clipboards that bore a sign reading: "SIGN HERE TO SUPPORT OPEN PRIMARIES IN IDAHO." The same or similar "open primaries" language appeared on banners at signature gathering events, on Idahoans for Open Primaries' and its member organizations' websites, in comments to the media, and in their social media posts.

By April 30, 2024, Idahoans for Open Primaries had collected 94,795 signatures in support of its Initiative petition. On May 1, 2024, Idahoans for Open Primaries submitted the signatures to the county clerks of 20 different counties for verification. The verification process resulted in approximately 75,000 verified signatures. On July 2, 2024, Idahoans for Open Primaries submitted the Petition and verified signatures to the Secretary of State. In a press release issued on July 10, 2024, the Secretary of State announced that the Initiative satisfied the statutory requirements to appear on the 2024 general election ballot. The Secretary of State issued a letter of acceptance,

5

certifying that the Initiative met the required threshold of 62,895 valid petition signatures—a number equivalent to six percent of the qualified electors at the time of the last general election in each of at least 18 legislative districts. *See* I.C. § 34-1805.

On July 24, 2024, the Attorney General filed this original action, naming the Secretary of State as a Respondent. The Attorney General alleges that the Initiative does not qualify to appear on the general election ballot because it is not supported by any valid signatures. Specifically, the Attorney General contends that all of the signatures on the Initiative petition are "null and void" because Idahoans for Open Primaries obtained them by making false statements or representations about the effect of the Initiative, in violation of Idaho Code section 34-1815. The Attorney General also alleges that the Initiative is "illegal on its face" because it pursues two distinct objectives—a top-four primary election system, as well as ranked choice voting in the general election—in violation of the constitutionally and statutorily mandated "single-subject rule." Idaho Const. art. III, § 16; I.C. § 34-1801A(1). The Attorney General asks us to exercise our original jurisdiction to issue a writ either prohibiting the Secretary of State from including the ballot title and number for the Initiative on the certified ballot that he furnishes to the county clerks, or mandating that the Secretary of State declare the Initiative petition signatures invalid, and to withdraw his filing, acceptance, and certification of the Initiative so that it does not appear on the final certified ballot.

The Attorney General and the Secretary of State each moved to expedite briefing, oral argument, and the Court's decision in this matter. In an exercise of our discretion, the Court issues this expedited opinion solely on the basis of the Attorney General's filings and declines to order additional briefing or hear oral argument. *See* I.A.R. 5.

### III.    ANALYSIS

The Attorney General is seeking a writ of prohibition or mandamus to remedy what he contends are "clear violations of the initiative requirements and to protect public confidence in the integrity of the initiative process and the upcoming election." This Court's jurisdiction to entertain the Attorney General's request stems from Article V, section 9 of the Idaho Constitution, which states: "The Supreme Court shall . . . have original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction." We have repeatedly observed that "'[t]his original jurisdiction is limited only by the separation of powers provisions contained in Article II, [s]ection 1 of the Idaho Constitution and this Court's own rules.'" *In re Verified Petition for Writs of*

6

*Certiorari & Mandamus* (*Idahoans for Open Primaries v. Labrador*), 172 Idaho 466, ___, 533 P.3d 1262, 1271 (2023) (second alteration in original) (quoting *Ybarra v. Legislature by Bedke*, 166 Idaho 902, 906, 466 P.3d 421, 425 (2020)); *see also Mead v. Arnell*, 117 Idaho 660, 663, 791 P.2d 410, 413 (1990)). However, before this Court will exercise its original jurisdiction, the party seeking an extraordinary writ must overcome a number of hurdles. Fundamental among them is a demonstration by the petitioning party that the case presents a justiciable controversy and, if it does, that it also satisfies the legal criteria for the relief sought—in this case, the issuance of a writ. As we explain below, the Attorney General has failed to make those showings.

A.      **The Attorney General has failed to establish that the Secretary of State has a clear legal duty to declare all of the signatures on the Initiative Petition invalid.**

In addition to challenging the Open Primaries Initiative on constitutional grounds, the Attorney General contends that the Initiative must be excluded from the general election ballot because it is not supported by any valid signatures. The Attorney General asserts that Idahoans for Open Primaries obtained all of the signatures on its initiative petition by "making the phrase 'open primaries' the ubiquitous slogan of its signature campaign and telling Idahoans, explicitly and implicitly, that the initiative will restore the primary system Idaho had before 2011." Because we held just a year ago that the term "open primaries" does not accurately describe what the Initiative proposes*, see Idahoans for Open Primaries*, 172 Idaho at ___, 533 P.3d at 1279-80, the Attorney General contends that the Coalition's use of the term "open primaries" for the purpose of obtaining signatures was knowingly and objectively false. Moreover, the Attorney General argues that Idahoans for Open Primaries largely omitted from its signature gathering campaign any mention of the "top-four primary" system the Initiative proposes to implement, or of its proposal for ranked-choice voting in the general election. Again, the Attorney General submits these omissions were tactical and intentionally made to mislead the public and persuade people to sign the petition. Indeed, the Attorney General's briefing is accompanied by the declarations of two individuals who state that they would not have signed the Initiative petition had signature gatherers accurately explained what the Initiative proposes. Because Idaho Code section 34-1815 renders "null and void" any signature obtained through the knowing use of false statements, misrepresentations, or material omissions concerning the "purport or effect of" an initiative petition, the Attorney General submits that the consequence of Idahoans for Open Primaries' knowing misrepresentations and omissions is that all of the signatures gathered in support of its petition are invalid. He therefore asks us to issue a writ of prohibition directing the Secretary of State not to include the ballot title

7

for the initiative on the certified ballot that he furnishes to the county clerks or, alternatively, to issue a writ of mandate ordering the Secretary of State to withdraw his filing, acceptance, and certification of the Initiative so that it does not appear on the final certified ballot.

For purposes of our analysis, we assume that the Attorney General's challenge to the validity of the signatures on the Initiative petition presents a justiciable controversy in the sense that it represents a challenge to the process by which the Initiative has been qualified to appear on the ballot. But that does not end our inquiry. We have long held that our authority to grant writs of mandamus and prohibition is circumscribed by strict adherence to the laws in which these writs are grounded. *Idaho State Athletic Comm'n by & through Stoddard v. Off. of the Admin. Rules Coordinator*, 173 Idaho 310, ___, 542 P.3d 718, 726 (2024); *Olden v. Paxton*, 27 Idaho 597, 603, 150 P. 40, 42 (1915). With this principle in mind, we must determine whether a writ (either of mandamus or of prohibition) directing the Secretary of State to effectively "unqualify" the Initiative for the general election ballot is a legally viable remedy for the violations of Idaho Code section 34-1815 that the Attorney General alleges occurred in this case. For the reasons explained below, we hold that it is not.

The legal requirements for a writ of mandamus are clear and often stated. A writ of mandamus "may be issued by the [S]upreme [C]ourt . . . to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station[.]" I.C. § 7-302. "A writ of mandamus will lie if the officer against whom the writ is brought has a clear legal duty to perform the desired act, and if the act sought to be compelled is ministerial or executive in nature." *Idaho State Athletic Comm'n*, 173 Idaho at __, 542 P.3d at 727 (internal quotation marks and citations); *accord Idahoans for Open Primaries*, 172 Idaho at ___, 533 P.3d at 1286; *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 512, 387 P.3d 761, 765 (2015); *Utah Power & Light Co. v. Campbell*, 108 Idaho 950, 953, 703 P.2d 714, 717 (1985). A party seeking a writ of mandamus must establish "a clear legal right to the relief sought." *Brady v. City of Homedale*, 130 Idaho 569, 571, 944 P.2d 704, 706 (1997). "A writ of mandamus will not lie unless the party seeking the writ has a clear right to have done that which the petitioner seeks and unless it is a clear legal duty of the officer to so act." *Id.* (first citing *Freeman v. McQuade*, 80 Idaho 387, 331 P.2d 263 (1958); then citing *Fitzpatrick v. Welch*, 96 Idaho 280, 527 P.2d 313 (1974)). Even where the officer against whom the writ is directed has a clear legal duty to act, a writ of mandamus will only issue "where there is not a plain, speedy and adequate remedy in the ordinary course of law." I.C. § 7-

8

303; *Hepworth Holzer, LLP v. Fourth Jud. Dist.*, 169 Idaho 387, 393, 496 P.3d 873, 879 (2021); *Coeur d'Alene Tribe*, 161 Idaho at 523, 387 P3d at 776.

"The writ of prohibition is the counterpart of the writ of mandate," I.C. § 7-401, and "is substantially similar in both scope and limitation," *Hepworth Holzer, LLP*, 169 Idaho at 393, 496 P.3d at 879. "It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person." I.C. § 7-401. "One seeking a writ of prohibition must show two contingencies are met: "(1) 'the tribunal, corporation, board or person is proceeding without or in excess of the jurisdiction of such tribunal, corporation, board, or person, and (2) that there is not a plain, speedy, and adequate remedy in the ordinary course of law." *Reclaim Idaho v. Denney*, 169 Idaho 406, 423, 497 P.3d 160, 177 (2021) (alteration, internal quotation marks, and citations omitted); *see also* I.C. § 7-402 (writ of prohibition may be issued when "there is not a plain, speedy and adequate remedy in the ordinary course of law"). "The writ of prohibition is a discretionary remedy under Idaho common law, granted only when this Court concludes that the remedy is appropriate." *In re Pet. for Writ of Prohibition* (*Beck v. Elmore Cnty Magis Ct.)*, 168 Idaho 909, 917, 489 P.3d 820, 828 (2021).

In asking this Court to issue a writ of mandamus that will prevent the Initiative from appearing on the November 2024 general election ballot, the Attorney General contends that the Secretary of State had a clear legal duty to refuse to file and accept the Initiative petition because all of the signatures on the petition, though verified by the clerks of 20 different counties, were obtained through misrepresentation about what the Initiative proposes, thus rendering those signatures "null and void." *See* I.C. § 34-1815. The flip side of that argument, of course, is that a writ of prohibition should issue because the Secretary of State exceeded his authority by certifying the Initiative for the ballot since all of the ill-gotten signatures are invalid. We are unpersuaded that the statutes at play create a legal duty for the Secretary of State, let alone a clear one.

The Attorney General's arguments require us to examine the role of the Secretary of State in the performance of his duties relating to the voter initiative process. "The [S]ecretary of [S]tate is the chief election officer of this state, and it is his responsibility to obtain and maintain uniformity in the application, operation and interpretation of election laws." I.C. § 34-201. As the chief election officer, the Secretary of State has an important role to play in the initiative and referendum process, but his duties in that regard are expressly prescribed by the statutes governing

9

initiative and referendum elections. I.C. §§ 34-1801 through 34-1823; s*ee also Reclaim Idaho*, 169 Idaho at 428, 497 P.3d at 182 (noting that while Article III, section 1 of the Idaho Constitution reserves to the people the fundamental right to propose and enact laws independent of the legislature, "the legislature may determine *how* the people's right to legislate is initiated"). The question before us here is whether those statutes impose upon the Secretary of State a clear legal duty to declare "null and void" what are otherwise facially valid initiative petition signatures, and to withdraw his filing, acceptance, and certification of the Initiative so that it does not appear on the final certified ballot. Our review of the relevant statutes convinces us that the Secretary of State has no such duties.

The statutory process of qualifying a voter initiative for the ballot begins when its sponsor delivers to the Secretary of State an initiative petition that is signed by at least twenty qualified electors of the state and accompanied by a proposed funding source for the cost of implementing the measure. I.C. § 34-1804(1), (2). Upon receipt of the initiative petition, the Secretary of State must file the petition in his office and immediately transmit one copy of it to the Attorney General for the issuance of a certificate of review and another copy of it to the Division of Financial Management for issuance of a fiscal impact statement. *Id*. The Attorney General then has twenty working days to review the proposed initiative "for matters of substantive import" and to "recommend to the petitioner such revision or alteration of the measure as may be deemed necessary and appropriate." I.C. § 34-1809(1)(a). Regardless of whether the petitioner accepts the Attorney General's advisory recommendations, the Attorney General must issue a certificate of review to the Secretary of State, who is then required to make the certificate of review available for public inspection in his office. I.C. § 34-1809(1)(b), (c). If, after issuance of the certificate of review, the petitioner wishes to proceed with his sponsorship, he has fifteen working days to file the measure with the Secretary of State, who must then transmit two copies of the initiative petition to the Attorney General for the assignment of ballot titles. I.C. § 34-1809(2). Upon receiving copies of the petition, the Attorney General has ten working days to prepare and submit to the Secretary of State "short" and "general" ballot titles. I.C. § 34-1809(2)(a), (d). The Secretary of State is then required to furnish to the petitioner the ballot titles, together with an approved form of the initiative petition. I.C. § 34-1809(2)(b). If there is a timely appeal of the sufficiency of the Attorney General's ballot title, this Court must examine the proposed initiative, hear argument, and issue a

decision "certify[ing] to the [S]ecretary of [S]tate a ballot title and a short title for the measure in accord with the intent of [section 34-1809]." I.C. § 34-1809(3)(c).

Upon receiving both the fiscal impact statement and the official ballot title from the Secretary of State, the sponsors of the initiative have eighteen months or until April 30 of the year of the next general election, whichever occurs earlier, to circulate the initiative petition and obtain the requisite number of signatures to qualify the initiative for the ballot. I.C.§ 34-1802(1). Once enough signatures are gathered, the sponsors must submit the signed initiative petitions to the county clerk for verification of the signatures, and they must do so no later than eighteen months from the receipt of the office ballot titles from the Secretary of State or by May 1 of the year an election on the initiative will be held, whichever is earlier. I.C. § 34-1802(2). The county clerk then has sixty days or until June 30, whichever is earlier, to verify the signatures contained in the petitions. I.C. § 34-1802(3). That verification process requires the county clerk to "carefully examine said petitions and strike from the petition any names for which he has determined that the name, address, or signature do not match and confirm that each name, address, and signature matches those of a qualified elector of the proper jurisdiction." I.C. 34-1807(4). The county clerk is then required to attach to the signature sheets a certificate addressed to the Secretary of State certifying the number of signatures on the petition that are those of qualified electors, and to deliver the petition with the certification attached to the person from whom he received it. I.C. § 34-1807(5).

Once the county clerk has completed the verification process, the proponents of the proposed initiative must file the verified initiative petitions with the Secretary of State not less than four months prior to the election at which the Initiative is to be voted on. I.C. § 34-1802(4). "Before such petitions shall be entitled to final filing and consideration by the [S]ecretary of [S]tate, there shall be affixed thereto the signatures of legal voters equal in number to not less than six percent (6%) of the qualified electors at the time of the last general election in each of at least eighteen (18) legislative districts; provided however, the total number of signatures shall be equal to or greater than six percent (6%) of the qualified electors of the state at the time of the last general election." I.C. § 34-1805(2). If the Secretary of State "refuse[s] to accept and file any [initiative petition] with the requisite number of signatures of qualified electors thereto attached, any citizen may apply, within ten (10) days after such refusal[,] to the district court for a writ of mandamus to compel him to do so." I.C. § 34-1808. If in such action a court decides that the petition "is legally

11

sufficient," the Secretary of State must file it, along with a certified copy of the judgment, as of the date it was originally offered for filing. *Id*. If, however, it is shown that the petition "is not legally sufficient, the court may enjoin the [S]ecretary of [S]tate and all other officers from certifying or printing on the official ballot for the ensuing election the ballot title and numbers of such measure." *Id*. Notably, the statute says nothing about examining the intent or understanding of each elector signing the petition.

Having reviewed the record in this case, we conclude that the Secretary of State performed all of the duties and ministerial acts that were required of him by statute. After this Court certified the Attorney General's revised short and general ballot titles to the Secretary of State, Idahoans for Open Primaries gathered well over 90,000 signatures in support of the Initiative Petition. The signatures were submitted to the county clerks of 20 different counties for verification on May 1, 2024. As a result of the verification process, the county clerks certified a combined total of just under 75,000 of the signatures on the Initiative Petitions were those of qualified electors in their respective legislative districts. On July 2, 2024, Idahoans for Open Primaries submitted its petition and attached verified signatures to the Secretary of State for final filing and consideration. The Secretary of State subsequently confirmed that the Initiative Petition was accompanied by the statutorily required number of signatures of qualified electors and, upon doing so, carried out his statutory duty to accept and file the petition, thereby certifying it for placement on the 2024 general election ballot. I.C. § 34-1805 (petitions accompanied by the requisite number of signatures of legal voters are "entitled to final filing and consideration by the [S]ecretary of [S]tate"); I.C. § 34-1808 (if Secretary of State refuses to accept and file an initiative petition with the requisite number of signatures of qualified voters attached thereto, a writ of mandamus will lie to compel him to do so).

The Attorney General does not dispute that all of the signatures attached to the final initiative petition submitted to the Secretary of State were those of qualified electors, or that those signatures met the geographic distribution requirements of Idaho Code section 34-1805. Nevertheless, he contends that the Secretary of State "has a clear legal duty to refuse to file and accept the petition" because all of the signatures were obtained through misrepresentations, thus rendering them "null and void" under Idaho Code section 34-1815.

According to the Attorney General, this "clear legal duty" arises from Idaho Code section 34-1808. As explained above, that statute authorizes a writ of mandate against the Secretary of

12

State if he refuses to accept and file a "legally sufficient" initiative petition; conversely, on a showing that the Secretary of State has filed an initiative petition that is not "legally sufficient," a court may enjoin him from certifying the measure for the official ballot. I.C. § 34-1808. The Attorney General suggests that the words "legally sufficient" in the statute mean something more than the initiative petition is, on its face, accompanied by the requisite number of signatures of qualified electors. He would also have the Secretary of State determine whether all of the verified signatures were gathered in compliance with Idaho Code section 34-1815's prohibition against the use of false statements and misrepresentations and, if not, declare those signatures "null and void." But nothing in sections 34-1808 or 34-1815, or any other statute, imposes such a duty.

The Secretary of State's role in the initiative process is purely ministerial. Upon receiving an initiative petition with the requisite number of verified signatures of qualified electors attached thereto, the Secretary of State must accept and file the petition and certify it for the official ballot. I.C. §§ 34-1805, 34-1808, and 34-1810. To be sure, Idaho Code section 34-1815 states that signatures gathered in violation of its provisions are "null and void." However, nothing in that section authorizes, much less requires, the Secretary of State to look beyond the facial validity of the signatures that have been presented to him and judge whether they were gathered in compliance with the statute. Such an adjudicatory function typically belongs to the courts of this state, not to an officer whose duties in the initiative process are ministerial in nature and are strictly spelled out, and limited, by statute. *See Davidson v. Wright*, 143 Idaho 616, 618–19, 151 P.3d 812, 814–15 (2006) (and cases cited therein) (city code spelled out in detail the ministerial duties of the city clerk when processing initiative petitions and nothing therein expressly or impliedly granted the city clerk discretion "to go behind the petitions to inquire or rule on the validity or constitutionality of a proposed initiative"); *Miller v. Davenport*, 8 Idaho 593, 594–95, 70 P. 610, 610 (1902) ("County auditors, so far as arranging the official ballots are concerned, act in a clerical capacity, and are not clothed with judicial or quasi judicial power. . . . They cannot go behind the certificates of nomination and inquire into the eligibility of candidates."). Indeed, had the Secretary of State refused to accept the facially valid signatures on the ground that they were obtained in violation of section 34-1815, he would have exceeded the bounds of his ministerial authority. *Davidson*, 143 Idaho at 618–20, 151 P.3d at 814–16.

The Attorney General suggests that the circumstances in this case are similar to those in which this Court has "not hesitated to declare the law and issue extraordinary writs," including

13

"where the Secretary of State was preparing to act contrary to law, particularly in consequential election-related circumstances proceeding on an 'urgent' timeline." He also asserts that the writs he requests in this case are necessary and appropriate because this Court "has already applied its writ authority to this [I]nitiative" in *Idahoans for Open Primaries*, 172 Idaho 566, 533 P.3d 1262. He submits that now, as then, a writ should issue because the issue in this case is "one of statewide importance" that "arises from the people's fundamental constitutional right to initiate or repeal legislation" and implicates an alleged constitutional violation that is "urgent" due to strict election deadlines. *Idahoans for Open Primaries*, 172 Idaho at ___, 533 P.3d at 1271–72.

We acknowledge that we have at times suggested that all that is required for this Court to exercise its original jurisdiction to issue an extraordinary writ is that "the petition alleges sufficient facts concerning a possible constitutional violation of an urgent nature." *See Reclaim Idaho v. Denney*, 169 Idaho 406, 418, 497 P.3d 160, 172 (2021) (citations omitted); *Ybarra v. Legislature by Bedke*, 166 Idaho 902, 906, 466 P.3d 421, 425 (2020) (citation omitted); *Regan v. Denney*, 165 Idaho 15, 20, 437 P.3d 15, 20 (2019) (citation omitted); *Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 133 Idaho 55, 57, 982 P.2d 358, 360 (1999); *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990). This includes instances where the Secretary of State was preparing to act contrary to law. *See Reclaim Idaho*, 169 Idaho at 423, 497 P.3d at 177; *Keenan*, 68 Idaho at 429, 195 P.2d at 664; *Van Valkenburgh*, 135 Idaho at 129, 15 P.3d at 1137. However, each of those cases involved a circumstance in which the Secretary of State had a clear legal duty to act or refrain from acting pursuant to recently enacted legislation that we deemed unconstitutional *as a matter of law*. *See Reclaim Idaho*, 169 Idaho at 423, 497 P.3d at 177 (writ issued to prevent Secretary of State from acting pursuant recently enacted statute that made it harder to qualify an initiative for the ballot, in violation of the people's constitutional right to legislate directly); *Keenan v. Price*, 68 Idaho 423, 429, 195 P.2d 662, 664 (1948) (alternative writ issued to require Secretary of State to certify candidate's name for ballot where constitutionality of recently enacted constitutional amendment was at issue); *Van Valkenburgh v. Citizens for Term Limits*, 135 Idaho 121, 124, 15 P.3d 1129, 1132 (2000) (writ issued to prohibit Secretary of State from placing certain information on ballot as required by the provisions a recently enacted statute that we declared unconstitutional). Similarly, our decision to grant a writ of certiorari in *Idahoans for Open Primaries* was not based solely on the urgency of the petition or the statewide importance of the people's initiative power; rather, we granted the writ in that case to compel the Attorney General to carry out his legal duty

14

to issue ballot titles that substantially complied with the requirements of state law. *Idahoans for Open Primaries*, 172 Idaho at \_\_\_, 533 P.3d at 1287.

Contrary to the Attorney General's assertion, this is not a case, like those cited above, in which we are being asked to "declare the law" and issue a writ prohibiting the Secretary of State from acting contrary to it. Unless and until there is a factual determination by a judicial officer that some or all of the verified signatures are "null and void" by virtue of having been obtained by false statements and representations in violation of Idaho Code section 34-1815, the Secretary of State is duty-bound to accept the verified signatures and certify the Initiative for the ballot. I.C. §§ 34-1805, 34-1808, 34-1810. While the Attorney General has presented this Court with evidence to support his claim that Initiative Petition signatures are invalid, our role in evaluating whether a writ should issue is determining whether the Attorney General has met his burden of demonstrating that the Secretary of State has a clear legal duty to reject the initiative petition. Having concluded that no such clear legal duty exists, we dismiss the Attorney General's Verified Petition.

Before we conclude, we take this opportunity to reiterate: The Idaho Constitution does not permit this Court to exercise its original jurisdiction to issue writs simply because a petition alleges sufficient facts concerning a possible constitutional violation of an urgent nature or because an issue is one of statewide importance. All original actions filed in this Court must be grounded in the writs enumerated in Article V, section 9 of the Idaho Constitution. *Idaho State Athletic Comm'n* 173 Idaho at \_\_, 542 P.3d at 726; *see also Olden v. Paxton* 27 Idaho 597, 603, 150 P. 40, 42 (1915) ("[I]n granting writs of prohibition, mandamus, and review, we adhere strictly to the law governing these writs."). Just as we must strictly adhere to the laws governing these writs, so too must the petitioner.

Our holding today is limited to the scope of this Court's authority to issue extraordinary writs. We do not reach the merits of this case, and the Attorney General is free to pursue his claims that the signatures are invalid in the appropriate district court.

**B.** **The Attorney General's challenge to the Initiative on the basis that it violates the single-subject rule is not ripe for review.**

We now turn to the Attorney General's challenge to the Initiative on the basis that it violates Idaho's constitutional requirement that all acts "embrace but one subject and matters properly connected therewith." Idaho Const. art. III, §16; *see also* I.C. § 34-1801A(1) ("An initiative petition shall embrace only one (1) subject and matters properly connected with it."). The purpose of this provision, often referred to as "the single-subject rule," is to "prevent the combining of

15

incongruous matters and objects totally distinct and having no connection nor relation with each other; to guard against 'logrolling' legislation; and to prevent the perpetration of fraud upon the members of the [l]egislature or the citizens of the state in the enactment of laws." *Hammond v. Bingham*, 83 Idaho 314, 319, 362 P.2d 1078, 1081 (1961) (some internal quotation marks and citations omitted); *accord Idaho Watersheds Project v. State Bd. of Land Commissioners*, 133 Idaho 55, 60, 982 P.2d 358, 363 (1999) (discussing the single-subject rule as it relates to constitutional amendments and observing its purpose is "to prevent the pernicious practice of 'logrolling'" (citation omitted)). The Attorney General argues that the Initiative violates the single-subject rule because it has two distinct and unrelated objects: (1) "to overhaul the primary election by abolishing the party-run framework" and (2) "to institute ranked-choice voting in the general election." Although both objects concern elections, the Attorney General asserts that these two objects have no necessary connection or relation with each other because "[a] top four primary has nothing do with how votes are tabulated in the general election, and its implementation is unrelated to adopting a ranked-choice voting system." He also argues that "bundling" what he contends is an unpopular proposal (ranked-choice voting) with a proposal with broader appeal (a top four primary) is a clear example of "logrolling" because it will force voters to "vote for a proposal they oppose in order to secure the passage of one they support." Even if we assume this argument properly invokes this Court's original jurisdiction, an issue we need not address, we decline the Attorney General's request to determine whether the Initiative violates Idaho's single-subject rule because the issue is not ripe and, therefore, presents no justiciable controversy.

"The doctrine of justiciability can be divided into several subcategories, including that of standing and ripeness." *Davidson v. Wright*, 143 Idaho 616, 620, 151 P.3d 812, 816 (2006) (citing *Weldon v. Bonner Cnty. Tax Coal.*, 124 Idaho 31, 35, 855 P.2d 868, 873 (1993), *overruled on other grounds by City of Boise v. Keep the Commandments Coal.*, 143 Idaho 254, 141 P.3d 1123 (2006)). "Ripeness is that part of justiciability that 'asks whether there is any need for court action at the present time.'" *Id.* (quoting *Gibbons v. Cenarrusa*, 140 Idaho 316, 317, 92 P.3d 1063, 1064 (2002)). Under the traditional ripeness test, a plaintiff or petitioner must prove "1) that the case presents definite and concrete issues, 2) that a real and substantial controversy exists, and 3) that there is a present need for adjudication." *Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002) (citing *Boundary Backpackers v. Boundary Cnty.*, 128 Idaho 371, 376, 913 P.2d 1141, 1146 (1996)); *Keep the Commandments Coal.*, 143 Idaho at 256, 141 P.3d at 1125. Where, as here,

16

the petitioner is mounting a pre-election challenge to a ballot initiative, the question whether the issue is ripe turns on whether the challenge is substantive or procedural. *See Davidson*, 143 Idaho at 621, 151 P.3d at 817 (finding substantive challenge to proposed initiative was not ripe but observing that "[p]re-election review of a challenged initiative remains appropriate where the 'procedures for placing the initiative on the ballot were not followed" (citations omitted)). The Attorney General's single subject argument challenges the *substance* of the Initiative, rather than the *process* by which it was qualified to be on the ballot.

This Court has addressed the justiciability of pre-election challenges to proposed initiatives on a number of occasions. In *Noh*, the petitioners filed an original action challenging the constitutionality of the Indian Gaming Initiative (Proposition One), which had qualified to appear on the ballot in the November 2002 general election. 137 Idaho at 799, 53 P.3d at 1218. This Court declined to reach the merits of the issue, concluding petitioners failed to prove the elements of the traditional ripeness test. *Id*. at 801, 53 P.3d at 1220. The Court reasoned that, because the initiative was "simply a proposal" and "ha[d] not become a law," there was "not a real controversy" and "no present need for adjudication." *Id*. We also observed that, if the initiative did not pass, there would "not be a need for an adjudication as to its validity." *Id*.

Following our determination that the petitioners in *Noh* failed to prove the elements of the traditional ripeness test, we went on to consider whether a statute that authorized petitioners to bring an action challenging the constitutionality of an initiative could itself create a justiciable controversy. *Id.* at 801–03, 53 P.3d at 1220–22. In concluding that it could not, we relied on Chief Justice Donaldson's concurring opinion in *Associated Taxpayers of Idaho, Inc. v. Cenarrusa*, 111 Idaho 502, 725 P.2d 526 (1986), a case in which "the Court determined that it would not entertain suits challenging the constitutionality of an initiative before the election took place." *Noh*, 137 Idaho at 801, 53 P.3d at 1220. Addressing the petitioners' pre-election challenge to the constitutionality of the proposed lottery initiative at issue in that case, Chief Justice Donaldson wrote that such challenge was

> premature and presents no justiciable controversy at this time. For this Court to act, "[there] must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Harris v. Cassia County,* 106 Idaho 513, 516, 681 P.2d 988, 991 (1984), *quoting Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S. Ct. 461, 81 L. Ed 617 (1937). Only if the lottery initiative passes, will its subject matter then become subject to

17

constitutional challenge. *Oregon Education Ass'n. v. Paulus,* 78 Or. App. 32, 714 P.2d 1060 (1986); *Union Electric Co. v. Kirkpatrick,* (Mo.1984), 678 S.W.2d 402; *State ex rel. Walter v. Edgar,* 13 Ohio St.3d 1, 469 N.E.2d 842 (1984); *McKee v. City of Louisville,* 200 Colo. 525, 616 P.2d 969 (1980). Until this future event occurs, we cannot do what petitioners ask of us.

*Associated Taxpayers of Idaho*, 111 Idaho at 502-03, 725 P.2d at 526-27 (Donaldson, J. concurring); *see also id*. at 503-04, 725 P.2d at 527-28 (Shepard, J. concurring) ("In my view it is exceedingly dangerous for this Court, or any court, to interfere with the legislative *process*. . . . I find no precedent for this Court prohibiting the voters from expressing their opinions at the polls.").

In an attempt to persuade us that their action challenging the constitutionality of the Indian Gaming Initiative was justiciable, the *Noh* petitioners relied on *Weldon v. Bonner County Tax Coalition*, 124 Idaho 31, 855 P.2d 868 (1993), and *Gumprecht v. City of Coeur d'Alene*, 104 Idaho 615, 661 P.2d 1214 (1983), both of which addressed the merits of pre-election challenges to county initiatives and, ultimately, "precluded the voters from considering the initiatives." *Noh*, 137 Idaho at 802, 53 P.3d at 1221. We distinguished *Weldon* and *Gumprecht*, explaining that, in each of those cases, "[t]he initiative process itself was flawed" because "the subject matter [of the proposed initiative] was beyond the scope of the county initiative process." *Id*. "On the other hand," we observed, "*Associated Taxpayers* dealt with a statewide initiative on a subject appropriate for the initiative process, though the substance of the initiative might violate the state Constitution." *Id*. After considering both lines of the authority, we determined that the *Associated Taxpayers* rationale applied and precluded the *Noh* petitioners' pre-election challenge to the constitutionality of the Indian Gaming Initiative. *Id*. at 802–03, 53 P.3d at 1221–22. We held:

> This is a statewide initiative on a subject in serious controversy. There is no challenge to the process by which the initiative has been qualified to be on the ballot or that the subject matter is beyond the reach of an initiative. If the initiative passes there will most certainly be a justiciable controversy. If the initiative fails there will be nothing to adjudicate. The reasoning of the three concurring opinions in *Associated Taxpayers* is applicable in this case. Accordingly, there is no justiciable controversy at this time. . . .

*Id*. at 803, 53 P.3d at 1222.

Since *Noh*, we have consistently declined to review substantive challenges to proposed initiatives based on concepts of ripeness and justiciability. *See Keep the Commandments Coal.*, 143 Idaho 254, 141 P.3d 1123 (holding city's challenge to otherwise qualified initiative on the ground that its subject fell outside the initiative power was not ripe for judicial resolution because

18

the initiative had not become law and overruling *Weldon,* 124 Idaho 31, 855 P.2d 868, *Gumprecht*, 104 Idaho 615, 661 P.2d 1214, and *Perrault v. Robinson*, 29 Idaho 267, 158 P. 1074 (1916)); *Davidson*, 143 Idaho at 621, 151 P.3d at 817 (holding that the substance of proposed initiative would "not be ripe for judicial review unless or until passage by the voters brings up the problem of enforcing a potentially invalid law" (citation omitted)). In fact, our decision in *Keep the Commandments Coalition* "expanded *Noh* to preclude not only pre-election substantive challenges to the constitutionality of an initiative as before, but also to bar pre-election review of whether the subject matter of an initiative comes within the scope of the initiative power." *Davidson*, 143 Idaho at 621, 151 P.3d at 817. As we explained in *Davidson*, however, "[p]re-election review of a challenged initiative remains appropriate where the 'procedures for placing the initiative on the ballot were not followed.'" *Id*. (quoting *Idaho Watersheds Project*, 133 Idaho at 58, 982 P.2d at 361).

In this case, the Attorney General argues that the Initiative improperly combines two distinct and incongruous subjects, in violation of the single-subject rule mandated by Article III, section 16 of the Idaho Constitution and Idaho Code section 34-1801A. Although we have not expressly "considered whether an initiative is subject to pre-election review for embracing multiple subjects," *Davidson*, 143 Idaho at 621 n.4, 151 P.3d at 817, n.4, we have held that similar challenges are substantive in nature, s*ee Idaho Watersheds Project*, 133 Idaho at 59–60, 982 P.2d at 362–63 (observing a challenge to a joint resolution on the ground that it combined separate and incongruous amendments in violation of the single-subject rule embodied in Article XX, section 2 of the Idaho Constitution is appropriately "raised after the election because it deals with the substance of the amendments rather than procedures used to present a proposed amendment to the electorate"). We reach the same conclusion here. The Attorney General's argument that the Initiative improperly combines the proposals for a top-four primary and ranked-choice voting in the general election is not a challenge to the procedures for placing the Initiative on the ballot; it is a substantive challenge to the constitutionality of an Initiative that has yet to face the voters and poses the same justiciability concerns that were present in *Associated Taxpayers, Noh*, and *Davidson*. Whether the Initiative violates the Idaho Constitution presents no real controversy at this time because the Initiative is simply a proposal and has not yet become law. The subject matter of the Initiative will not be ripe for judicial review unless "passage by the voters brings up the

19

problem of enforcing a potentially invalid law." *Davidson*, 143 Idaho at 621, 151 P.3d at 817. Unless and until that happens, there is no need for an adjudication as to its validity.

We note that our holding today is consistent with prior cases in which we have considered single-subject rule challenges to constitutional amendments and legislative acts only after those amendments and laws were enacted. *See*, *e.g.*, *Sons & Daughters of Idaho, Inc. v. Idaho Lottery Comm'n*, 144 Idaho 23, 32, 156 P.3d 524, 533 (2007); *Idaho Watersheds Project*, 133 Idaho at 59–60, 982 P.2d at 362–63; *Idaho Water Res. Bd. v. Kramer,* 97 Idaho 535, 548 P.2d 35 (1976); *Hammond v. Bingham*, 83 Idaho 314, 319, 362 P.2d 1078, 1081 (1961); *Penrod v. Crowley,* 82 Idaho 511, 356 P.2d 73 (1960); *Keenan v. Price,* 68 Idaho 423, 195 P.2d 662 (1948); *Am. Fed'n of Lab. v. Langley*, 66 Idaho 763, 766, 168 P.2d 831, 832–33 (1946); *McBee v. Brady,* 15 Idaho 761, 100 P. 97 (1909). Having determined that the Attorney General's challenge to the Open Primaries Initiative on the grounds that it violates Idaho's constitutionally and statutorily mandated single-subject rule is not yet ripe for adjudication, we decline to consider it.

## IV.    CONCLUSION

For all of the reasons explained above, the Attorney General's Verified Petition for a Writ of Prohibition or Mandate is DISMISSED. Given the decision to dismiss the Petition on procedural grounds, the Court need not address the merits of its Order to Show Cause as to Why the Attorney General Should Not be Disqualified from Representing Secretary of State McGrane issued on July 29, 2024.


Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.